```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                   CASE NO. 17-10003-CR-KMM-4


 3


 4   UNITED STATES OF AMERICA            Key West, Florida


 5                                       July 10, 2017
           vs.                           Monday
 6


 7   STALIN OBANDO-BAUTISTA,             Scheduled 9:00 a.m.
     ELOI CRISTINO PENAFIEL-MENDOZA,     9:26 a.m. to 10:24 a.m.
 8   JOSE ANTONIO MERO-RIVAS,
     REGINALDO BONILLA-ALEMAN,
 9   MAURICIO MARTINEZ-MEDINA, and       Pages 1 - 44
     NORMAN FELIPE GONZALEZ-SOLIS
10
     ------------------------------------------------------------
11

12                        SENTENCING HEARING

13

                 BEFORE THE HONORABLE K. MICHAEL MOORE
14                UNITED STATES CHIEF DISTRICT JUDGE

15
     APPEARANCES:
16
     FOR THE GOVERNMENT:           YVONNE RODRIGUEZ-SCHACK, AUSA
17                                 U.S. Attorney's Office
                                   99 Northeast 4th Street
18                                 Miami, Florida 33132-2111

19   FOR THE DEFENDANT            GENNARO CARIGLIO, JR., ESQ.
     MAURICIO MARTINEZ-MEDINA:    10800 Biscayne Boulevard
20                                Suite 900
                                  Miami, Florida  33161-7400
21

22   STENOGRAPHICALLY
     REPORTED BY:                 GLENDA M. POWERS, RPR, CRR, FPR
23                                Official Court Reporter
                                  United States District Court
24                                400 North Miami Avenue, Room 08S33
                                  Miami, Florida 33128
25
```

```
 1              (Call to the order of the Court:)

 2              (Defendant Reginaldo Bonilla-Aleman aided by

 3    Court-Certified Spanish Interpreters.)

 4              COURTROOM DEPUTY:  United States versus Reginaldo

 5    Bonilla-Aleman.

 6              THE COURT:  Counsel, note your appearances.

 7              MS. RODRIGUEZ-SCHACK:  Good morning, Your Honor.

 8    Yvonne Rodriguez-Schack on behalf of the United States.

 9              THE COURT:  Are you a messenger or an attorney?

10              MS. RODRIGUEZ-SCHACK:  I am an attorney.

11              THE COURT:  Okay.  I want to make sure we have

12    attorneys here.

13              MR. CARIGLIO:  Good morning, Your Honor.  Gerry

14    Cariglio on behalf of Reginaldo Bonilla-Aleman, and I am also

15    an attorney.

16              THE COURT:  Okay.  Time to take up, any objections to

17    the PSI?

18              MR. CARIGLIO:  Yes, Judge.  And I think we have a

19    resolution on one of the issues, which may moot some of my

20    arguments, if the Court accepts the Government and I's

21    resolution.

22              On 3C1.2, the two-level enhancement for reckless

23    endangerment, I believe the Government and I are now in

24    agreement that that two-level enhancement does not apply, so

25    that would moot all my double-counting arguments.
```

```
 1              MS. RODRIGUEZ-SCHACK:  That is correct, Your Honor.

 2              THE COURT:  And how do we get to that conclusion?

 3              MR. CARIGLIO:  Judge, we actually reached the

 4    conclusion independently, so I'm not only able to tell you how

 5    I came to that conclusion.

 6              In the guideline, it specifically notes that the two

 7    levels wouldn't apply if another person that was in danger was

 8    a codefendant.

 9              So because the codefendants in this case -- it

10    shouldn't apply to their reckless endangerment, the fact that

11    they were in danger.

12              The only possible people that could have been put in

13    danger would have been Coast Guard, and they, in fact, were the

14    ones that were actually firing the weapons, so I think it's

15    clear that they weren't in danger while they were on the

16    helicopter.

17              As a result, that's why I believe 3C1.2 did not apply.

18    And when I approached the prosecutor on this, before I even got

19    to speak those concerns to her, she had told me that she wasn't

20    seeking the enhancement on 3C1.2 because she doesn't believe it

21    applies.  So I don't know what her reasoning is, but that's my

22    reasoning.

23              THE COURT:  Well, as I understand your reason is

24    because he was just endangering one of his codefendants, that

25    it doesn't apply?
```

1           MR. CARIGLIO:  Yeah, Judge, if you look at application

2     note 4.

3           THE COURT:  Well, hold on a second.  That's what I want

4     to get to.  3C1.2, reckless endangerment during flight,

5     application note 4.

6           MR. CARIGLIO:  Yes, Judge.  Look at the definition of

7     "another person."

8           THE COURT:  "Another person" includes any person except

9     a participant in the offense who willingly participated in the

10    flight.

11          MR. CARIGLIO:  So that would exclude everyone --

12    clearly, it excludes Mr. Bonilla-Aleman, but it would also

13    exclude all the codefendants, and that's why this particular

14    guideline doesn't apply, in my opinion.

15          THE COURT:  Does the probation office agree?

16          PROBATION OFFICER:  Your Honor, we applied the

17    enhancement based upon the disabling shots that were rendered

18    by the Coast Guard and that has been the position of the

19    probation office when given that enhancement in other cases as

20    well.

21          THE COURT:  But having heard the argument -- what was

22    it, the fact that they were endangering --

23          PROBATION OFFICER:  It was the endangerment to the

24    Coast Guard.  I did include the codefendants, but based upon

25    the application note --

1          THE INTERPRETER:  Your Honor, from the interpreters, we

2     cannot hear the probation officer.

3          PROBATION OFFICER:  Based upon the application note,

4     as far as endangering the codefendants, that would not apply.

5          However, the rendering of the shots does apply because

6     it does put the Coast Guard in some form of danger by having

7     them sit with the vessel.

8          MR. CARIGLIO:  Judge, I don't see -- I understand the

9     Coast Guard fired shots and disabled the boat, but I don't see

10    how that could put the Coast Guard in danger.

11         The testimony at trial was the person that fired the

12    shots was well-trained in weaponry, was a precision marksman

13    that actually made a precision shot into an engine that was

14    moving at a distance.  There was no other Coast Guard personnel

15    in the water, so I don't see how a Coast Guard officer doing

16    the job that he was trained to do endangered himself.

17         I mean, it makes no sense, probation's position,

18    really.

19         THE COURT:  Okay.  What's the Government's position?

20         MS. RODRIGUEZ-SCHACK:  Your Honor, I had -- originally,

21    in my papers, as the Court can see from my filing docket entry

22    234, I had requested that this apply.

23         I would bring to the Court's attention that in illegal

24    alien smuggling when shots are fired by the Coast Guard, the

25    application -- there's actually an enhancement for that, and it

1    would apply in the context of illegal re-entry.

2           However, on cases like this, in drug smuggling, there's

3    not a specific enhancement for it.  I believe that it would

4    apply.

5           But after consultation with members of our office, they

6    felt that it was unclear and requested that, perhaps, it would

7    be a wiser course were it not to pursue it in this case.

8           However, I will note, it does -- there is a specific

9    enhancement in illegal re-entry cases where the Coast Guard

10   does fire shots to get the vessel to stop.

11       MR. CARIGLIO:  Judge, and that -- you know, that tends

12   to make more sense, where you have other individuals that may

13   be victims as well, you know, so...

14       MS. RODRIGUEZ-SCHACK:  Well, I will note, I understand

15   Mr. Cariglio's point, but I will note and the Court had the

16   benefit of sitting through the trial testimony, as the Court

17   notes, there are three people normally aboard any helicopter,

18   and there are a pilot, a copilot and a precision marksman.

19          And it's a helicopter, okay.  And they are hovering,

20   weaving, and I do believe, Your Honor, that when all of a

21   sudden you go into a mode where the helicopter goes -- is

22   pursuing a vessel, whether it's illegal re-entry or drug

23   smuggling, and they start getting into position to fire shots,

24   I think that puts the air crew at risk.

25          That is my position.

 1          THE COURT:  Okay.  Anything more on that point?

 2          MR. CARIGLIO:  No, Judge.

 3          THE COURT:  We'll go ahead and sustain the objection.

 4          MR. CARIGLIO:  Thank you, Judge.

 5          THE COURT:  What does that do to the offense level?

 6          MR. CARIGLIO:  It reduces it to a 38 before we take up

 7  my other objection.

 8          THE COURT:  Okay.  What's your next objection?

 9          MR. CARIGLIO:  Judge, my next objection is to the

10  two-level enhancement for obstruction of justice, 3C1.1.

11          Originally, in the draft PSR, that wasn't counted

12  because they counted an enhancement in 2D1.1.  So in the final

13  PSR, they removed the 2D1.1 enhancement and counted the

14  obstruction of justice enhancement for 3C1.1.

15          So I'm objecting to that for several reasons.

16          Number one, with respect to paragraph 4, 11 and 18,

17  there was no testimony that Mr. Bonilla-Aleman intentionally

18  lit the fire.  If you remember, the pilot from the Coast Guard

19  helicopter specifically testified that after reviewing the

20  video he couldn't tell who the -- what, not who -- but what the

21  individual closest to the fire was doing immediately prior to

22  the fire.  So there's an actual issue with respect to the level

23  of proof that's required.

24          I understand it's only preponderance of the evidence in

25  the sentencing hearing, but there is no evidence from the

1    witness stand on whether or not this fire was intentionally lit

2    or whether it was accidentally lit.

3        So I believe there's an issue with respect to the

4    burden of proof in the amount of evidence that was presented by

5    the Government on that issue.

6        Also, with respect to paragraph 11 and 18, if you look

7    at application note 4(d), this particular enhancement occurred

8    contemporaneously with the rest.

9        In application note 4(d), provides that if the conduct

10   occurred contemporaneously with the rest, it shall not,

11   standing alone, be sufficient to warrant an adjustment for

12   obstruction unless it resulted in a material hindrance to the

13   official investigation or prosecution.

14       So where it's different than the case that the

15   Government cited from the Tenth Circuit, where the individual

16   actually swallowed the crack cocaine so it couldn't be weighed

17   and measured and, therefore, affected his offense level, here

18   the situation is different.

19       Because the testimony from the video is all of these --

20   and from the witness stand -- was that all of these bales were

21   the same size and shape.

22       So Mr. Bonilla-Aleman is being held responsible in a

23   guideline range of 150 kilos but less than 450 kilos of

24   cocaine.  There was 15 bales, according to the Government, 15

25   or 16 bales; nine bales were recovered, six to seven bales were

1    not recovered because of either disposing them over the side or

2    because of the fire.

3           So six to seven bales couldn't be waived.

4           But we know from our own eyes from looking at the video

5    that they were all of the same size and shape.  So taking that

6    into account, Judge, because nine bales resulted in 191

7    kilograms of cocaine, that's an average of 21.22 kilograms per

8    bag.  If you add the higher amount, the seven bales, instead of

9    the six, that gets to another 148.54 kilograms to the total.

10          So that would still put him in the same guideline

11   range, because that would bring the total weight to 339.54, so

12   it's not really a material hindrance to the investigation

13   because he's being held responsible for the exact same

14   guideline range that he would have been had all of those bales

15   been recovered and weighed.

16          So that's another objection.

17          Also, with respect to this obstruction of justice, it

18   has to be willful.  And the video -- in the Government's

19   theory, in their arguments, was that Edil Vazquez-Vazquez was

20   piloting the boat at this time and, at the end of the day, it

21   was Edil Vasquez-Vasquez that chose not to pull over here.

22          He was the captain and Mr. Bonilla-Aleman was just

23   along for the ride, if that's any part of this obstruction

24   enhancement.  It was a little unclear from the PSR, that's why

25   I threw that objection in there.

1           THE COURT:  Is that it?

2           MR. CARIGLIO:  That's it, with respect to that

3   particular objection.

4           THE COURT:  What's the Government's response?

5           MS. RODRIGUEZ-SCHACK:  First of all, the United States

6   would adamantly argue that the enhancement does apply.

7           I think that the arguments made by counsel are

8   misguided.

9           The heightened standard of material hindrance, as

10  indicated in the application note 4(d), does not apply here,

11  for two reasons.

12          First, the defendant's conduct did not occur

13  contemporaneously with the arrest.

14          Rather, as the Court will recall from the evidence, it

15  took place a period after their engines were shot and disabled

16  and prior to the Over The Horizon arriving.

17          Indeed, the vessel that was laden with the bales of

18  cocaine was engulfed in flames before the arrival of the OTH.

19          Secondly, the requirement that the obstruction result

20  in the material hindrance applies only when there is an attempt

21  but it's not successful.

22          Here, it was successful.  As the Court will recall from

23  the videotape, you -- the defendants were on a vessel with

24  multiple bags of -- bales of cocaine when their vessel was

25  disabled.

1          They tried to destroy the evidence by jettisoning it.

2          When the bales of cocaine failed to sink, then they

3     went ahead and started to retrieve the bales that they could

4     and were only able to retrieve, you know, six, seven bales,

5     close to half of the bales, close to half of the bales that

6     were aboard, and then proceed to set the vessel ablaze.

7          Now, they're destroying two things.

8          Number one, not only are they destroying close to half

9     of the bales that were aboard their vessel, but they're also

10    destroying -- equally important -- is the vessel itself,

11    because that's the platform for their destruction of the

12    cocaine.

13         But also would hinder the prosecution because their

14    alleged story that they're out fishing can then no longer be

15    refuted because the vessel is now being destroyed.  So if there

16    was any fishing gear, that has now been destroyed; if there

17    were any nets, any poles, any ice, that's all been destroyed.

18         But also, if there were any firearms on board in

19    furtherance of their crime, or any maps, or any notes, or any

20    coordinates, that would have also been destroyed.

21         So the United States indicates that this would -- the

22    enhancement would apply, and this is bore out in the Bedford

23    case.  Remember, it's not the attempt.  It clearly applies, as

24    indicated in Bedford, when you succeed, and this defendant

25    succeeded.

 1          Now, Mr. Cariglio's argument that, well, Judge, does it

 2   really matter because does it really hinder the prosecution,

 3   because if we take the bales that were recovered, there were

 4   nine bales with a gross weight of -- an estimated gross weight

 5   of 191.  That means that there was, approximately, 20 kilos of

 6   cocaine aboard the vessel.

 7          So even assuming that these other bales that were piled

 8   on in the center of the vessel and then set ablaze, it still

 9   would not get us over the 450, so, really, the enhancement

10   wouldn't apply.

11          But that argument is a red herring -- no pun intended.

12          But the legal failure is not the issue here; because

13   whether this defendant knew that the cutoff was, you know, 150

14   or 450, it doesn't matter.  It doesn't matter.

15          The fact is that he succeeded in destroying the bales

16   of cocaine, as well as the vessel itself.

17          So the United States would argue that the enhancement

18   does apply, as supported by the Bedford case.

19          THE COURT:  All right.  Anything further on that?

20          MR. CARIGLIO:  Judge, just with respect to the argument

21   about the fishing poles and the possibility of a firearm.

22          The Government has the burden of proving by a

23   preponderance of the evidence this enhancement.  That's been

24   nothing more than pure speculation.  And we have pretty clear

25   video of exactly what was on that boat and what was not on that

1    boat.

2            We also have the testimony of the Over The Horizon

3    vessel, who was able to circle the boat before it went down and

4    testify, I believe, that he saw no fishing items on the vessel.

5    I believe that was the trial testimony.

6            THE COURT:  All right.  I'm satisfied that the

7    Government has met its burden.

8            The fact that -- your one point was that it would --

9    the destruction of the other bales would not change the

10   guideline range, otherwise, well, that's a portion of the

11   application of, it also provides that it could be an official

12   hindrance to the official investigation, and to that extent, it

13   was.

14           Furthermore, having heard the evidence at trial, I

15   would come down based on the evidence that I heard that this

16   was a fire that was intentionally set and was not -- did not

17   start accidentally.

18           In fact, I seem to recall that there had been a prior

19   instance which one of the codefendants was saying M.O. was

20   employed to put the vessel on fire as a way of destroying

21   evidence or hindering the investigation.

22           So I'll note the objection and deny it.

23           Next objection.

24           MR. CARIGLIO:  Judge, the next objection is to

25   paragraph 17 of the PSR, in the fact that Mr. Bonilla-Aleman

1    received no role adjustment.

2         We believe he should receive a four-level role

3    adjustment for minimal role, pursuant to 3B1.2(a); or, if the

4    Court determines that's not appropriate, a minor role reduction

5    for two levels, or somewhere in the middle for three levels.

6         And I went back and I looked at some cases over the

7    years, some of these Title 46 cases because, for many years,

8    the Government's recommended minor roles for individuals in

9    Title 46 cases, and I know this Court, in particular, doesn't

10   always go along with the parties' recommendations -- we just

11   witnessed that about 20 minutes ago on the prior case -- so I

12   pulled United States versus Juan Gonzalez-Castaneda.

13        That was a case before Your Honor, 11-CR-10020, where

14   eight defendants were caught aboard a vessel subject to the

15   jurisdiction of the United States -- like this case -- with 402

16   kilos of cocaine, either the same or a little more cocaine, if

17   you believe that the other six bales, seven bales had 20 kilos

18   of cocaine in there, so relatively the same range of cocaine.

19        And the Government recommended in the plea agreement

20   that these individuals get two-level minor role reductions.

21        And the Court, after considering the recommendations of

22   the parties, approved two levels -- not four levels, but two

23   levels -- for six of the defendants, Edwin Garcia, Federico

24   Teran, Luis Romero, Edwar Berrio, Silfredo Hernandez, and Pedro

25   Camano.

1        And then I also looked around to some other cases that

2   I cited.  U.S. versus Visbal, V-I-S-B-A-L, Case 12-CR-20317,

3   Judge Martinez, where six defendants were interdicted on a

4   vessel subject to the jurisdiction of the U.S. with 113 kilos

5   of cocaine and 67 kilos of marijuana.

6        And the Government recommended two-level minor role

7   reductions for two individuals, and four-level minimal

8   participant reductions for two other individuals, Enrique Moya

9   and Evangelisto Milanes, which is why I requested a four-level

10  minimal role reduction for Mr. Bonilla-Aleman.

11       In a case I was a part of in front of Judge Lenard,

12  there were four -- and it's cited in my objections to the

13  PSR -- U.S. versus Ernesto Cano Morales, et al.  There were

14  four defendants interdicted on a go-fast vessel with over 700

15  kilos of cocaine, double the amount of cocaine in this case,

16  and all four of those defendants, including the captain who

17  wasn't my client, were given a two-level minor role reduction.

18       His role is no different than that of Mr. Moya and

19  Mr. Milanes, if you look at the dockets and, you know, who

20  received four levels, and certainly it was no different than

21  any of the other individuals that received a two-level

22  reduction.

23       And, Judge, since then, the U.S. Sentencing

24  Commission -- since some of those cases, the U.S. Sentencing

25  Commission has amended the minor -- or the role guideline 3B1.2

1    to include the fact -- and it includes some language that I

2    think directly applies to Mr. Bonilla-Aleman's situation.

3           I'd like to point out the fact -- because Government

4    always argues that, you know, this was essential for the

5    overall bigger picture of importing drugs -- whether these

6    drugs were going to Europe or the United States, who knows --

7    the Government always points out that those actions are

8    essential.

9           And now, what the amended guideline says, since these

10   other cases -- where these other defendants didn't even have

11   the benefit of the amended guideline -- it says:

12          The fact that a defendant performs an essential or

13   indispensable role in the criminal activity is not

14   determinative.  Such a defendant may receive an adjustment

15   under this guideline if he or she is substantially less

16   culpable than the average participant in the criminal activity.

17          And just above that, the other part of the new

18   language, in addition to the five factors, is, for example, a

19   defendant who does not have a proprietary interest in the

20   criminal activity and who is simply being paid to perform

21   certain tasks should be considered for an adjustment under this

22   guideline.

23          And this man, along with everybody else on the boat,

24   was being paid to perform a certain task, was to transport that

25   cocaine on the boat, according to the Government's theory.

1          These people didn't have a proprietary interest in this

2    cocaine, and they're being held responsible for all of the

3    cocaine, not just a small part of it.

4          This is an individual that has a sixth grade education

5    that, clearly, isn't somebody that's a higher-up, or -- in the

6    drug organization, an owner of the drugs at all.

7          And I think the Court should consider that, as well as

8    what this Court's done in the past with similarly-situated

9    defendants that have come before it, and grant him a role

10   reduction.

11         THE COURT:  Any response from the Government?

12         MS. RODRIGUEZ-SCHACK:  Just very briefly, Your Honor.

13         The United States would submit that the burden is upon

14   the defendant to show that he is entitled to any mitigating

15   role adjustment.  I don't feel that he has -- the record failed

16   to establish that he had put forth any factual arguments that

17   would warrant it, and the United States would adamantly oppose

18   any role adjustment.

19         THE COURT:  So, in this case, how many defendants were

20   on trial, six or seven?

21         MS. RODRIGUEZ-SCHACK:  There was six defendants that

22   went to trial.  There was seven aboard the vessel, one was

23   Medivacked out.

24         THE COURT:  And of the six that went to trial, what was

25   the disposition?

1          MS. RODRIGUEZ-SCHACK:  Two were convicted, this

2   defendant and another defendant were convicted.

3          THE COURT:  And the other four?

4          MS. RODRIGUEZ-SCHACK:  The other four, the jury hung.

5          THE COURT:  And so there was an issue as to the

6   relative culpability in the minds of the jury.

7          At least that's how I would interpret the jury's

8   verdict.  There was some issue as to the explanation for the

9   presence of the other defendants on board.

10          I'm not saying I believe it for a minute, but I think

11   the defense was they just happened to run into them out in the

12   middle of the Pacific somewhere and picked them up, so they

13   really weren't involved in this offense.  And we're going to

14   see if we can resolve that issue shortly.

15          But to that point, the jury had no problem concluding

16   that this individual, this defendant, was more culpable

17   relative to the other defendants that they were unable to reach

18   a verdict on.

19          MR. CARIGLIO:  Judge, I would disagree with that.

20          It wasn't an issue of whether Mr. Bonilla-Aleman was

21   more culpable than the other defendants.  It was an issue of

22   whether Mr. -- the other defendants were guilty or not guilty,

23   not more culpable.

24          And I would also, you know, point out that it's the

25   Court here that's the ultimate fact-finder here in the

1    sentencing.  And if the Court doesn't believe for a minute

2    these other defendants were just picked up in the middle of the

3    ocean, it certainly shouldn't read anything into whether some

4    jurors wanted to acquit the other defendants.

5          I mean, this really comes down to the fact that this

6    Court has recognized in the past, in a 2011 case --

7          THE COURT:  Oh, please -- I mean, the PSI has

8    referenced De Varon for every case that I have recognized a

9    minor minimal participant, there are probably 10 that I have

10   gone the other way, you know.

11         These are fact-specific cases and -- not that it should

12   make a difference, but the cases that you cited to -- I thought

13   you were reading pursuant to a plea agreement, as opposed to

14   someone that was going to trial, that shouldn't deprive them of

15   that right, but if the Government -- and I don't go along with

16   the Government from time to time on these kinds of requests --

17   but if the Government has made their own fact-intensive inquiry

18   as to whether somebody should be awarded a two-level reduction

19   pursuant to a plea agreement with the Government, you know, I

20   don't -- I'm not necessarily bound by it, but I do think it's a

21   factor to consider.

22         And in this case, I had an opportunity to hear the

23   evidence and the point that I was trying to get at was that the

24   jury did differentiate, in terms of culpability, what they

25   thought were the defendants who were guilty beyond a reasonable

1   doubt for their role in the offense; and those that they were

2   unable to reach a verdict on, not that they were not guilty --

3   we don't know what the vote was on the jury in that regard --

4   but they were just not able to reach a verdict.

5       So, but the one thing they did conclude is that,

6   certainly, the two defendants that were found guilty were

7   at least more culpable than the four in which they did not

8   reach a verdict, which says something about the strength of the

9   evidence of this defendant's involvement.

10      And lastly, as the Government's pointed out, it is an

11  evidentiary burden, it's not an argument version, and I just --

12  based on the evidence I heard, I haven't heard any evidence to

13  suggest that this defendant had a -- either a minor or minimal

14  role in the offense.

15      Okay.  So I will note the objection and deny it.

16      Next objection?

17      MR. CARIGLIO:  Judge, the final objection was paragraph

18  24 in the draft PSR, in paragraph 25 in the final PSR.  It's

19  the prior criminal conviction which we objected to.

20      I think that under 851 the Court has to make a finding

21  of whether or not that prior criminal conviction belongs to

22  Mr. Bonilla-Aleman, you know.

23      I will concede, at trial, the Government introduced a

24  certified copy of a conviction from Tampa with

25  Mr. Bonilla-Aleman -- with the name Reginaldo Bonilla-Aleman.

 1          And I believe they also brought down -- well, they did

 2     bring down a state law enforcement officer -- I forgot from

 3     which department -- that pointed out Mr. Bonilla-Aleman as the

 4     individual that had the prior conviction.

 5          However, I made a big deal about it on

 6     cross-examination that he had initially told the other

 7     prosecutor in this case that he may not be able to identify

 8     Mr. Bonilla-Aleman; and prior to his identification of

 9     Mr. Bonilla-Aleman, he was shown one of the Government exhibits

10     with Mr. Bonilla-Aleman's current name and picture on it, and

11     it was only after that that he actually pointed out and

12     identified Mr. Bonilla-Aleman.

13          So we would argue that that doesn't rise to the level

14     of proof beyond a reasonable doubt.  I also ask for --

15          THE COURT:  Is that the standard?

16          MR. CARIGLIO:  Yes, Judge.  It's a different standard

17     in 851, and that's why, in an abundance of caution this

18     morning, just because --

19          THE COURT:  I'm talking about for sentencing purposes?

20          MR. CARIGLIO:  Judge, for -- well, it's -- yeah, for

21     criminal history category purposes, it's preponderance of the

22     evidence.

23          For minimum mandatory purposes, it's beyond a

24     reasonable doubt.

25          So, in an abundance of caution, just so there were no

1    issues this morning, I filed a formal response reiterating my

2    objection in paragraph 24, and I term that as a denial to the

3    851.  And I also requested trial by jury.

4         I recognize the U.S. Supreme Court's decision in

5    Almendarez versus Torres -- Almendarez Torres versus

6    United States, to the contrary, but it's really the same issue

7    with a differing standard, so we'd object to paragraph 24 and

8    also deny the prior conviction.

9         THE COURT:  Is it 24 or 25?

10        MR. CARIGLIO:  It's 25, excuse me.  It was originally

11   24.

12        THE COURT:  All right.  The Government's response?

13        MS. RODRIGUEZ-SCHACK:  Yes, Your Honor.  The

14   United States, first of all, will note that the defendant filed

15   document entry 241 at 7:10 this morning, less than two hours

16   before today's hearing.  It is totally out of time, and the

17   United States would ask that that be stricken.

18        The second thing is that the -- this is clearly

19   established at trial, in fact, it was uncontested and admitted

20   to by the defense, so I would rest on that.

21        MR. CARIGLIO:  Judge, with respect to the timeliness,

22   Section 851 provides that the defense needs to file a written

23   response before the sentence, so -- it doesn't specifically

24   require any time limits, and I did give the Government notice I

25   was objecting to this back on June 7th, 2017.

1          THE COURT:  All right.  Well, the question remains

2     whether this is the individual that was convicted of what,

3     basically, the same offense that he was convicted for on this

4     occasion, but he did it on August 14th, 2003, and he received

5     70 months imprisonment.

6          MR. CARIGLIO:  Yes, Judge.

7          THE COURT:  And I think it was established that, to my

8     satisfaction beyond a reasonable doubt, that this individual is

9     one in the same, so I'll note the objection and deny it.

10         Next objection.

11         MR. CARIGLIO:  Judge, that's it, as far as objections;

12    just 3553 argument.

13         THE COURT:  Okay.  So, for guideline calculation

14    purposes, that would establish a guideline of 262 to 327 with a

15    criminal history category of 2; is that correct?

16         MR. CARIGLIO:  That is correct, Your Honor.

17         MS. RODRIGUEZ-SCHACK:  Yes, Your Honor.

18         THE COURT:  And 262 to 327.  Just to aid in appellate

19    review, what I would also note, that the sentence imposed would

20    be a sentence imposed within the guidelines.

21         But in the alternative, would be a sentence pursuant to

22    the United States versus Booker, as a reasonable sentence after

23    consideration of the 3553 factors.

24         So, just in the event that you were to appeal on any of

25    the three grounds -- I think you had four objections, and I

1    granted one of them -- on the other three objections, if you

2    were to appeal and the Circuit sustained your objection, please

3    advise them that the sentence that I impose today would be the

4    same sentence, in any event, if it were to be remanded for

5    resentencing, just so that they know that that would be the

6    sentence I would impose pursuant to the United States versus

7    Booker, in an effort to conserve judicial resources and moot

8    your sentencing guideline objections.  Okay?

9         All right.  You had the 3553 factors that you wanted to

10   discuss?

11        MR. CARIGLIO:  Yes, Judge.  Judge, with respect to the

12   3553 factors, we would ask for -- since the Court found that

13   the Government's met their burden pursuant to 851, the lowest

14   sentence I can ask for is 240 months.

15        So I'm asking for a very small downward variance, from

16   the bottom of the guidelines -- which are 262 months -- to that

17   of 240 months.

18        Mr. Bonilla-Aleman stands before this Court a

19   49-year-old man, who, based on a 240-month sentence and the

20   amount of gain time he would get, wouldn't be released until he

21   is 66 years old were the Court to impose the minimum sentence.

22        He comes from an extremely poor background.  He has

23   sixth grade education.  I understand, he does have one prior

24   for the exact same offense in which he got 70 months.  But

25   clearly, a sentence that is stepped up from 70 months to 20

 1    years is certainly a deterrent effect.

 2          And at the end of the day, Judge, even though I may not

 3    have met my burden with respect to minor role, I think the

 4    Court knows from its extensive experience on the bench exactly

 5    where these individuals fit in the drug-trafficking

 6    organization.

 7          While they may not -- while they may be an

 8    indispensable cog -- because somebody's got to get on the boat

 9    and actually transport these drugs -- at the end of the day,

10    they're not someone at the higher levels of the

11    drug-trafficking organization.

12          So, 20 years certainly represents a sentence that is a

13    sufficient deterrent in this particular case, you know, while I

14    would also point out that to avoid unwanted sentencing

15    disparities, a slight downward variance is warranted.

16          While those other cases that I cited were plea

17    agreements where individuals got minor role and the Government

18    made their own fact-intensive inquiries, as the Court said a

19    few minutes ago, at the end of the day, both those individuals

20    and my client are individuals that are on a boat with cocaine

21    that's going to another country somewhere in Central America

22    and, ultimately, the cocaine's either going to Europe or the

23    United States, depending on the particular transaction.

24          So he's really no different in terms of culpability

25    than those other individuals.  And those other individuals

1    generally have received sentences between five and 10 years.

2         So for Mr. Bonilla-Aleman to receive a sentence of 20

3    years, a very slight downward variance in this case, I think is

4    appropriate, given his status, given his background, given the

5    fact that it does increase his sentence dramatically from his

6    last offense and it avoids unwanted sentencing disparities.

7         So I think that's why the Court should grant a downward

8    variance in this case.

9         THE COURT:  You know, the problem with that is that, in

10   referencing those other cases, we don't really have all the

11   facts before us on those other cases.

12        We don't have the benefit of what the Court's

13   determinations were in those other cases.  For example, on

14   three of the objections that were raised in this case that were

15   overruled, so we don't know if they were exposed to those.

16        We don't know what their criminal history category was.

17   For example, whether they had done the exact same thing once

18   before that put them into a higher criminal history category.

19        They may be different from the standpoint that they got

20   acceptance of responsibility because they pled guilty.

21        So we're not comparing apples to apples, and that's why

22   it's a -- it's been very difficult to embrace that kind of

23   argument that you're making by trying to compare him to

24   something -- or to someone else who is not in the same position

25   that he's in.

1          MR. CARIGLIO:  Right.  They may not be exactly in the

2     same position, I understand the Court's statement, you know,

3     but that's only a part of it.

4          At the end of the day, you know, the Court has a lot of

5     experience in these cases, and at the end of the day, you know,

6     generally, the people that are on these boats -- without fail,

7     in all the cases that I've handled -- are poor, uneducated

8     people that are doing this for not large sums of money -- maybe

9     large sums of money to them, but not large sums of money -- and

10    they get on these boats and they transport these drugs.

11         And that makes them similar to just about everybody

12    else that comes before the Court, with the exception of the

13    fact that, admittedly, you know, the Court, you know, has found

14    that he has a prior.  So...

15         THE COURT:  How many kilos of cocaine were on board

16    this vessel?

17         MR. CARIGLIO:  If you take the six to seven bales that

18    were lit on fire, that would be 330-something kilos of cocaine.

19         THE COURT:  330 kilos, total, the ones that were

20    seized, as well as the ones that were --

21         MR. CARIGLIO:  Yes.  I came up with 339-and-a-half

22    kilos.

23         THE COURT:  What's 330 kilos of cocaine worth?

24         MR. CARIGLIO:  Judge, it depends where, you know...

25         THE COURT:  In Miami, Florida.

    1          MR. CARIGLIO:  Off the top of my head, I would say,

    2     once again, if it's being sold individually by kilo, somewhere

    3     in the neighborhood of $30,000 per kilo.

    4          THE COURT:  Individually.

    5          MR. CARIGLIO:  Individually; but wholesale, a lot less.

    6          THE COURT:  But that -- do we know what the purity was

    7     of this cocaine?

    8          MR. CARIGLIO:  We probably do, but I do not know off

    9     the top of my head.

   10          THE COURT:  In excess of 90 percent?

   11          MR. CARIGLIO:  I'm not sure, Judge.

   12          THE COURT:  Does the Government know?

   13          MS. RODRIGUEZ-SCHACK:  I don't recall, Your Honor, but

   14     it's pretty high because it's coming directly from the source.

   15          THE COURT:  And based on your experience, do you know

   16     how many times you can cut that kilo to get it to

   17     personal-consumption strength?

   18          MR. CARIGLIO:  Judge, not based on my personal

   19     experience, but I understand that it can be cut on several --

   20     you know, it can be cut quite a few times.

   21          But I understand where the Court's going with this --

   22          THE COURT:  So we're talking -- yeah, you understand --

   23     millions of dollars.

   24          MR. CARIGLIO:  Absolutely.  But the people that are

   25     reaping the millions of dollars -- and why 20 years is

1    sufficient for this guy, is the people that are reaping

2    millions of dollars -- what happens is, is they get brought up

3    from Colombia.  They get extradited.

4         They come up here, they cooperate with the

5    Government -- because they're at the highest levels of the

6    drug-trafficking organization and they're able to provide the

7    most substantial assistance -- so those individuals generally

8    get way less than 20 years, and they're the ones that's reaping

9    the millions and tens of millions of dollars.

10        And then we have the sixth-graders that are so poor

11   that they're the mopes that get put on the boat, and they're

12   the ones that get the higher sentence.

13        And that's why I have a real issue with these cases, as

14   I'm sure the Court knows from the trial, but from a sentencing

15   perspective, I think we can all agree that Mr. Bonilla-Aleman

16   is not the individual that's making hundreds of thousands of

17   dollars, or millions of dollars, or tens of millions of

18   dollars.  And those are the people that the Court should be

19   giving harsher sentences to, the king pins.

20        This man is not a king pin.  This man is a

21   sixth-grade-educated, poor individual that's a mope on a boat.

22        THE COURT:  Well, when I have that opportunity, I do,

23   and that's why they get life.

24        MR. CARIGLIO:  And, Judge, you bring up a good point,

25   because if you sentence him to the 20 years -- as opposed to

1    262 months, and I hope the Court doesn't go above the bottom of

2    the guidelines -- but at 20 years, this man gets out doing

3    85 percent of the time when he turns 66.

4           THE COURT:  Okay.  Mr. Aleman, do you want to say

5    anything on your own behalf before sentence is imposed?

6           THE DEFENDANT:  No.

7           THE COURT:  Anything from the Government?

8           MS. RODRIGUEZ-SCHACK:  Your Honor, the United States

9    would just add that I understand that advisory guideline range

10   is 262 to 327.

11          Mr. Cariglio is requesting a slight variance of 22

12   months to 240.  As indicated in my filings, the United States

13   would, based on the guidelines, be requesting a slight variance

14   upward of 33 months, to a sentence of 360.

15          I believe that that is a reasonable sentence when you

16   consider all of the factors this defendant -- this is at least

17   his second time before a U.S. Court charged and convicted of

18   exactly the same thing.  He is -- stands before this Court

19   convicted of trafficking in large sums of -- or large amounts

20   of cocaine.

21          The street value, even assuming Mr. Cariglio's

22   extrapolation of the amount of kilos seized and the street

23   value, that would be over 10 million dollars, and that is

24   assuming, you know, it hasn't been cut several times over,

25   which is usually the practice.

1          This defendant, back in 2004, stood before another

2     Federal Judge, you know, expressed his apology, wouldn't be

3     back again.  He goes ahead and does exactly the same thing,

4     trafficking in cocaine, setting the vessel ablaze, trying to

5     escape any culpability.

6          The history of the recidivism, in and of itself, is a

7     basis for this Court to consider even an upward departure.  The

8     United States hasn't requested an upward departure based on

9     recidivism, but is requesting a slight variance based on his

10    personal characteristics and going back and doing exactly the

11    same thing.

12         It, obviously, has never served as a deterrent.  The

13    arguments made back in 2004 for this Court to take a reduction,

14    it's, like, Judge, by the time he gets out, this man is going

15    to be in his forties.  Well, guess what.  He stands today at

16    the age of 49 convicted of doing the exact same thing.

17         I have no doubt that, you know, given the opportunity,

18    he will probably come back at, you know, fifties and sixties,

19    if given the opportunity, and do exactly the same thing.

20         It, obviously, has not served as a deterrent.  The

21    United States would recommend and feel it appropriate and

22    reasonable a sentence of 360 months.  Thank you.

23         THE COURT:  So we are to take into consideration the

24    nature and circumstances of the instant offense, and I would

25    point out, the large quantity of drugs that were involved and

1   the very detrimental impact that amount of drugs has on

2   society, whatever their ultimate destination was, and to the

3   extent that he's being characterized as some low-level

4   individual in an otherwise larger conspiracy, he, nevertheless,

5   plays an integral and essential role.

6          But for his willingness to participate in this criminal

7   endeavor, these drugs never reach their destination, so he

8   cannot, in my mind, be considered just someone who is along for

9   the ride, so to speak.

10          The Court has considered the history and

11   characteristics of the defendant.  We have pointed out his

12   first run-in with the law where he received 70 months

13   imprisonment; apparently, failed to make any impression on him

14   in terms of deciding whether to engage in similar criminal

15   conduct in the future, so, obviously, that -- even that length

16   of sentence was not a deterrent.

17          But we're also to consider respect for the law -- he's

18   shown no respect for the law -- and deterrence, not only his

19   own deterrence, but a sentence that will deter others from

20   engaging in similar types of behavior in the future.

21          The Court has considered the statements of all parties,

22   the presentence report, which contains the advisory guidelines

23   and the statutory factors as set forth in Title 18,

24   United States Code, Section 3553(a).

25          The sentence will be imposed within and at the middle

1   of the advisory guideline range.  This will provide sufficient

2   punishment and deterrence.

3          It is further the finding of the Court the defendant is

4   not able to pay a fine.

5          It is the judgment of the Court that the defendant,

6   Reginaldo Bonilla-Aleman, is committed to the Bureau of Prisons

7   to be in prison for a term of 300 months as to each of

8   Counts 1 and 2, to run concurrently; and as I know that

9   sentence is imposed both pursuant to the sentencing guidelines,

10  as well as a reasonable sentence post-Booker.

11         Upon release from imprisonment, the defendant shall be

12  placed on supervised release for a term of 10 years, as to each

13  of Counts 1 and 2, to run currently.

14         Within 72 hours of release from the custody of the

15  Bureau of Prisons, the defendant shall report in person to the

16  probation office in the district to which the defendant is

17  released.

18         While on supervised release, the defendant shall comply

19  with the mandatory and standard conditions of supervised

20  release, which include:  Not committing any crimes, being

21  prohibited from possessing a firearm or other dangerous device,

22  not unlawfully possessing a controlled substance and

23  cooperating in the collection of DNA.

24         The defendant shall also comply with the following

25  special conditions:  Surrendering to immigration for removal

1    after imprisonment as noted in part G of the presentence

2    report.

3           It is further ordered the defendant shall pay

4    immediately to the United States a special assessment of $100

5    as to each of the Counts 1 and 2, for a total of $200.

6           Total sentence, 300 months imprisonment, 10 years

7    supervised release, and a $100 special assessment.

8           Now that sentence has been imposed, does the defendant

9    or his counsel object to the Court's findings of fact or the

10   manner in which sentence was pronounced?

11          MR. CARIGLIO:  Yes, Judge.  We have two objections.

12          We'd object to the 300 months on the basis that it's

13   substantively unreasonable, in that it's greater than necessary

14   to punish Mr. Bonilla-Aleman.

15          We'd renew all our other objections.

16          And we also object that it's procedurally unreasonable.

17   I understand the Court's rationale in making alternative

18   findings that under the guidelines or under Booker.  However,

19   the fact is that had the Court sustained some of my objections,

20   in order to get to the 3553(a) analysis, it has to take into

21   consideration the guidelines.

22          So had we been at a lower guideline, you know, the

23   Court would have had to consider that in determining --

24          THE COURT:  I did.

25          MR. CARIGLIO:  -- an ultimate sentence.

1            THE COURT:  I did.

2            MR. CARIGLIO:  And Judge, we'd object on those grounds.

3            THE COURT:  Okay.  I did.  And that's why I say it

4    would be a 300-month sentence, even were you to have received

5    all the benefits of those guideline calculations.

6            MR. CARIGLIO:  Judge, the only other two requests --

7    the only other request I would make, although

8    Mr. Bonilla-Aleman has no family here, in the United States,

9    there's a lot of flights from South America and Latin America

10   here to South Florida, as well as other places, but I would ask

11   that he be housed in South Florida or as close as possible

12   thereto as the recommendation from the Court.

13           THE COURT:  I'll make the recommendation, but I

14   can't -- it's only a recommendation.

15           Mr. Aleman, do you understand you have a right to

16   appeal the sentence that I've imposed?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Anything further?

19           MR. CARIGLIO:  No, Your Honor.  Have a good day.

20           THE COURT:  You, too.

21           (Proceedings concluded at 10:24 a.m.)

22

23

24

25

```
 1                 C E R T I F I C A T E

 2

 3            I hereby certify that the foregoing is an

 4   accurate transcription of the proceedings in the

 5   above-entitled matter.

 6

 7
     October 5th, 2017      /s/Glenda M. Powers
 8   DATE                   GLENDA M. POWERS, RPR, CRR, FPR
                            Official Federal Court Reporter
 9                          United States District Court
                            400 North Miami Avenue, 08S33
10                          Miami, Florida 33128

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**$**

$100 [2] - 34:4, 34:7
$200 [1] - 34:5
$30,000 [1] - 28:3

**/**

/s/Glenda [1] - 36:7

**0**

08S33 [1] - 1:24, 36:9

**1**

1 [4] - 1:9, 33:8, 33:13, 34:5
10 [6] - 1:5, 19:9, 26:1, 30:23, 33:12, 34:6
10800 [1] - 1:19
10:24 [2] - 1:7, 35:21
11 [2] - 7:16, 8:6
11-CR-10020 [1] - 14:13
113 [1] - 15:4
12-CR-20317 [1] - 15:2
148.54 [1] - 9:9
14th [1] - 23:4
15 [2] - 8:24
150 [2] - 8:23, 12:13
16 [1] - 8:25
17 [1] - 13:25
17-10003-CR-KMM-4 [1] - 1:2
18 [3] - 7:16, 8:6, 32:23
191 [2] - 9:6, 12:5

**2**

2 [4] - 23:15, 33:8, 33:13, 34:5
20 [10] - 12:5, 14:11, 14:17, 24:25, 25:12, 26:2, 28:25, 29:8, 29:25, 30:2
2003 [1] - 23:4
2004 [2] - 31:1, 31:13
2011 [1] - 19:6
2017 [3] - 1:5, 22:25, 36:7
21.22 [1] - 9:7
22 [1] - 30:11
234 [1] - 5:22
24 [5] - 20:18, 22:2, 22:7, 22:9, 22:11
240 [3] - 24:14, 24:17, 30:12
240-month [1] - 24:19

241 [1] - 22:15
25 [3] - 20:18, 22:9, 22:10
262 [5] - 23:14, 23:18, 24:16, 30:1, 30:10
2D1.1 [2] - 7:12, 7:13

**3**

300 [3] - 33:7, 34:6, 34:12
300-month [1] - 35:4
327 [3] - 23:14, 23:18, 30:10
33 [1] - 30:14
330 [2] - 27:19, 27:23
330-something [1] - 27:18
33128 [2] - 1:24, 36:10
33132-2111 [1] - 1:18
33161-7400 [1] - 1:20
339-and-a-half [1] - 27:21
339.54 [1] - 9:11
3553 [4] - 23:12, 23:23, 24:9, 24:12
3553(a [1] - 34:20
3553(a) [1] - 32:24
360 [2] - 30:14, 31:22
38 [1] - 7:6
3B1.2 [1] - 15:25
3B1.2(a [1] - 14:3
3C1.1 [2] - 7:10, 7:14
3C1.2 [4] - 2:22, 3:17, 3:20, 4:4

**4**

4 [3] - 4:2, 4:5, 7:16
4(d [3] - 8:7, 8:9, 10:10
400 [2] - 1:24, 36:9
402 [1] - 14:15
44 [1] - 1:9
450 [3] - 8:23, 12:9, 12:14
46 [2] - 14:7, 14:9
49 [1] - 31:16
49-year-old [1] - 24:19
4th [1] - 1:17

**5**

5th [1] - 36:7

**6**

66 [2] - 24:21, 30:3
67 [1] - 15:5

**7**

70 [4] - 23:5, 24:24, 24:25, 32:12
700 [1] - 15:14
72 [1] - 33:14
7:10 [1] - 22:15
7th [1] - 22:25

**8**

85 [1] - 30:3
851 [5] - 20:20, 21:17, 22:3, 22:22, 24:13

**9**

90 [1] - 28:10
900 [1] - 1:20
99 [1] - 1:17
9:00 [1] - 1:7
9:26 [1] - 1:7

**A**

a.m [4] - 1:7, 1:7, 35:21
ablaze [3] - 11:6, 12:8, 31:4
able [7] - 3:4, 11:4, 13:3, 20:4, 21:7, 29:6, 33:4
aboard [6] - 6:17, 11:6, 11:9, 12:6, 14:14, 17:22
above-entitled [1] - 36:5
absolutely [1] - 28:24
abundance [2] - 21:17, 21:25
acceptance [1] - 26:20
accepts [1] - 2:20
accidentally [2] - 8:2, 13:17
according [2] - 8:24, 16:25
account [1] - 9:6
accurate [1] - 36:4
acquit [1] - 19:4
actions [1] - 16:7
activity [3] - 16:13, 16:16, 16:20
actual [1] - 7:22
adamantly [2] - 10:6, 17:17
add [2] - 9:8, 30:9
addition [1] - 16:18
adjustment [7] - 8:11, 14:1, 14:3, 16:14, 16:21, 17:15, 17:18

admitted [1] - 22:19
admittedly [1] - 27:13
advise [1] - 24:3
advisory [3] - 30:9, 32:22, 33:1
affected [1] - 8:17
age [1] - 31:16
ago [2] - 14:11, 25:19
agree [2] - 4:15, 29:15
agreement [4] - 2:24, 14:19, 19:13, 19:19
agreements [1] - 25:17
ahead [3] - 7:3, 11:3, 31:3
aid [1] - 23:18
aided [1] - 2:2
air [1] - 6:24
al [1] - 15:13
ALEMAN [1] - 1:8
Aleman [25] - 2:2, 2:5, 2:14, 4:12, 7:17, 8:22, 9:22, 13:25, 15:10, 18:20, 20:22, 20:25, 21:3, 21:8, 21:9, 21:12, 24:18, 26:2, 29:15, 30:4, 33:6, 34:14, 35:8, 35:15
Aleman's [2] - 16:2, 21:10
alien [1] - 5:24
alleged [1] - 11:14
Almendarez [2] - 22:5
alone [1] - 8:11
alternative [2] - 23:21, 34:17
amended [3] - 15:25, 16:9, 16:11
America [3] - 25:21, 35:9
AMERICA [1] - 1:4
amount [6] - 8:4, 9:8, 15:15, 24:20, 30:22, 32:1
amounts [1] - 30:19
analysis [1] - 34:20
ANTONIO [1] - 1:8
apology [1] - 31:2
appeal [3] - 23:24, 24:2, 35:16
APPEARANCES [1] - 1:15
appearances [1] - 2:6
appellate [1] - 23:18
apples [2] - 26:21
application [9] - 4:1, 4:5, 4:25, 5:3, 5:25, 8:7, 8:9, 10:10, 13:11

applied [1] - 4:16
applies [4] - 3:21, 10:20, 11:23, 16:2
apply [16] - 2:24, 3:7, 3:10, 3:17, 3:25, 4:14, 5:4, 5:5, 5:22, 6:1, 6:4, 10:6, 10:10, 11:22, 12:10, 12:18
approached [1] - 3:18
appropriate [3] - 14:4, 26:4, 31:21
approved [1] - 14:22
argue [3] - 10:6, 12:17, 21:13
argues [1] - 16:4
argument [7] - 4:21, 12:1, 12:11, 12:20, 20:11, 23:12, 26:23
arguments [6] - 2:20, 2:25, 9:19, 10:7, 17:16, 31:13
arrest [1] - 10:13
arrival [1] - 10:18
arriving [1] - 10:16
assessment [2] - 34:4, 34:7
assistance [1] - 29:7
assuming [2] - 12:7, 30:21, 30:24
attempt [2] - 10:20, 11:23
attention [1] - 5:23
attorney [3] - 2:9, 2:10, 2:15
Attorney's [1] - 1:17
attorneys [1] - 2:12
August [1] - 23:4
AUSA [1] - 1:16
Avenue [2] - 1:24, 36:9
average [2] - 9:7, 16:16
avoid [1] - 25:14
avoids [1] - 26:6
awarded [1] - 19:18

**B**

background [2] - 24:22, 26:4
bag [1] - 9:8
bags [1] - 10:24
bales [25] - 8:20, 8:24, 8:25, 9:3, 9:6, 9:8, 9:14, 10:17, 10:24, 11:2, 11:3, 11:4, 11:5, 11:9, 12:3, 12:4, 12:7, 12:15, 13:9, 14:17, 27:17
based [11] - 4:17,

4:24, 5:3, 13:15, 20:12, 24:19, 28:15, 28:18, 30:13, 31:8, 31:9

**basis** [2] - 31:7, 34:12

**BAUTISTA** [1] - 1:7

**Bedford** [3] - 11:22, 11:24, 12:18

**BEFORE** [1] - 1:13

**behalf** [3] - 2:8, 2:14, 30:5

**behavior** [1] - 32:20

**belongs** [1] - 20:21

**bench** [1] - 25:4

**benefit** [3] - 6:16, 16:11, 26:12

**benefits** [1] - 35:5

**Berrio** [1] - 14:24

**between** [1] - 26:1

**beyond** [4] - 19:25, 21:14, 21:23, 23:8

**big** [1] - 21:5

**bigger** [1] - 16:5

**Biscayne** [1] - 1:19

**board** [3] - 11:18, 18:9, 27:15

**boat** [11] - 5:9, 9:20, 12:25, 13:1, 13:3, 16:23, 16:25, 25:8, 25:20, 29:11, 29:21

**boats** [2] - 27:6, 27:10

**BONILLA** [1] - 1:8

**Bonilla** [25] - 2:2, 2:5, 2:14, 4:12, 7:17, 8:22, 9:22, 13:25, 15:10, 16:2, 18:20, 20:22, 20:25, 21:3, 21:8, 21:9, 21:10, 21:12, 24:18, 26:2, 29:15, 33:6, 34:14, 35:8

**BONILLA-ALEMAN** [1] - 1:8

**Bonilla-Aleman** [23] - 2:2, 2:5, 2:14, 4:12, 7:17, 8:22, 9:22, 13:25, 15:10, 18:20, 20:22, 20:25, 21:3, 21:8, 21:9, 21:12, 24:18, 26:2, 29:15, 33:6, 34:14, 35:8

**Bonilla-Aleman's** [2] - 16:2, 21:10

**Booker** [4] - 23:22, 24:7, 33:10, 34:18

**bore** [1] - 11:22

**bottom** [2] - 24:16, 30:1

**Boulevard** [1] - 1:19

**bound** [1] - 19:20

**briefly** [1] - 17:12

**bring** [4] - 5:23, 9:11, 21:2, 29:24

**brought** [2] - 21:1, 29:2

**burden** [7] - 8:4, 12:22, 13:7, 17:13, 20:11, 24:13, 25:3

**Bureau** [2] - 33:6, 33:15

**BY** [1] - 1:22

## C

**calculation** [1] - 23:13

**calculations** [1] - 35:5

**Camano** [1] - 14:25

**cannot** [2] - 5:2, 32:8

**Cano** [1] - 15:13

**captain** [2] - 9:22, 15:16

**CARIGLIO** [42] - 1:19, 2:13, 2:18, 3:3, 4:1, 4:6, 4:11, 5:8, 6:11, 7:2, 7:4, 7:6, 7:9, 10:2, 12:20, 13:24, 18:19, 20:17, 21:16, 21:20, 22:10, 22:21, 23:6, 23:11, 23:16, 24:11, 27:1, 27:17, 27:21, 27:24, 28:1, 28:5, 28:8, 28:11, 28:18, 28:24, 29:24, 34:11, 34:25, 35:2, 35:6, 35:19

**Cariglio** [2] - 2:14, 30:11

**Cariglio's** [3] - 6:15, 12:1, 30:21

**case** [19] - 3:9, 6:7, 8:14, 11:23, 12:18, 14:11, 14:13, 14:15, 15:11, 15:15, 17:19, 19:6, 19:8, 19:22, 21:7, 25:13, 26:3, 26:8, 26:14

**CASE** [1] - 1:2

**Case** [1] - 15:2

**cases** [18] - 4:19, 6:2, 6:9, 14:6, 14:7, 14:9, 15:1, 15:24, 16:10, 19:11, 19:12, 25:16, 26:10, 26:11, 26:13, 27:5, 27:7, 29:13

**Castaneda** [1] - 14:12

**category** [4] - 21:21, 23:15, 26:16, 26:18

**caught** [1] - 14:14

**caution** [2] - 21:17, 21:25

**center** [1] - 12:8

**Central** [1] - 25:21

**certain** [2] - 16:21, 16:24

**certainly** [5] - 15:20, 19:3, 20:6, 25:1, 25:12

**certified** [1] - 20:24

**Certified** [1] - 2:3

**certify** [1] - 36:3

**change** [1] - 13:9

**characteristics** [2] - 31:10, 32:11

**characterized** [1] - 32:3

**charged** [1] - 30:17

**CHIEF** [1] - 1:14

**chose** [1] - 9:21

**circle** [1] - 13:3

**Circuit** [2] - 8:15, 24:2

**circumstances** [1] - 31:24

**cited** [5] - 8:15, 15:2, 15:12, 19:12, 25:16

**clear** [2] - 3:15, 12:24

**clearly** [5] - 4:12, 11:23, 17:5, 22:18, 24:25

**client** [2] - 15:17, 25:20

**close** [4] - 11:5, 11:8, 35:11

**closest** [1] - 7:21

**Coast** [11] - 3:13, 4:18, 4:24, 5:6, 5:9, 5:10, 5:14, 5:15, 5:24, 6:9, 7:18

**cocaine** [26] - 8:16, 8:24, 9:7, 10:18, 10:24, 11:2, 11:12, 12:6, 12:16, 14:16, 14:18, 15:5, 15:15, 16:25, 17:2, 17:3, 25:20, 27:15, 27:18, 27:23, 28:7, 30:20, 31:4

**cocaine's** [1] - 25:22

**Code** [1] - 32:24

**codefendant** [1] - 3:8

**codefendants** [6] - 3:9, 3:24, 4:13, 4:24, 5:4, 13:19

**cog** [1] - 25:8

**collection** [1] - 33:23

**Colombia** [1] - 29:3

**coming** [1] - 28:14

**Commission** [2] - 15:24, 15:25

**committed** [1] - 33:6

**committing** [1] - 33:20

**compare** [1] - 26:23

**comparing** [1] - 26:21

**comply** [2] - 33:18, 33:24

**concede** [1] - 20:23

**concerns** [1] - 3:19

**conclude** [1] - 20:5

**concluded** [1] - 35:21

**concluding** [1] - 18:15

**conclusion** [3] - 3:2, 3:4, 3:5

**concurrently** [1] - 33:8

**conditions** [2] - 33:19, 33:25

**conduct** [3] - 8:9, 10:12, 32:15

**conserve** [1] - 24:7

**consider** [6] - 17:7, 19:21, 30:16, 31:7, 32:17, 34:23

**consideration** [3] - 23:23, 31:23, 34:21

**considered** [4] - 16:21, 32:8, 32:10, 32:21

**considering** [1] - 14:21

**conspiracy** [1] - 32:4

**consultation** [1] - 6:5

**consumption** [1] - 28:17

**contains** [1] - 32:22

**contemporaneously** [3] - 8:8, 8:10, 10:13

**context** [1] - 6:1

**contrary** [1] - 22:6

**controlled** [1] - 33:22

**convicted** [7] - 18:1, 18:2, 23:2, 23:3, 30:17, 30:19, 31:16

**conviction** [5] - 20:19, 20:21, 20:24, 21:4, 22:8

**cooperate** [1] - 29:4

**cooperating** [1] - 33:23

**coordinates** [1] - 11:20

**copilot** [1] - 6:18

**copy** [1] - 20:24

**correct** [3] - 3:1, 23:15, 23:16

**counsel** [3] - 2:6, 10:7, 34:9

**counted** [3] - 7:11, 7:12, 7:13

**counting** [1] - 2:25

**country** [1] - 25:21

**Counts** [3] - 33:8,

33:13, 34:5

**course** [1] - 6:7

**COURT** [55] - 1:11, 2:6, 2:9, 2:11, 2:16, 3:2, 3:23, 4:3, 4:8, 4:15, 4:21, 5:19, 7:1, 7:3, 7:5, 7:8, 10:1, 10:4, 12:19, 13:6, 17:11, 17:19, 17:24, 18:3, 18:5, 19:7, 21:15, 21:19, 22:9, 22:12, 23:1, 23:7, 23:13, 23:18, 26:9, 27:15, 27:19, 27:23, 27:25, 28:4, 28:6, 28:10, 28:12, 28:15, 28:22, 29:22, 30:4, 30:7, 31:23, 34:24, 35:1, 35:3, 35:13, 35:18, 35:20

**Court** [43] - 1:23, 1:23, 2:1, 2:3, 2:20, 5:21, 6:15, 6:16, 10:14, 10:22, 14:4, 14:9, 14:21, 17:7, 18:25, 19:1, 19:6, 20:20, 24:12, 24:18, 24:21, 25:4, 25:18, 26:7, 27:4, 27:12, 27:13, 29:14, 29:18, 30:1, 30:17, 30:18, 31:7, 31:13, 32:10, 32:21, 33:3, 33:5, 34:19, 34:23, 35:12, 36:8, 36:9

**Court's** [8] - 5:23, 17:8, 22:4, 26:12, 27:2, 28:21, 34:9, 34:17

**Court-Certified** [1] - 2:3

**COURTROOM** [1] - 2:4

**crack** [1] - 8:16

**crew** [1] - 6:24

**crime** [1] - 11:19

**crimes** [1] - 33:20

**criminal** [8] - 16:13, 16:16, 16:20, 20:19, 20:21, 21:21, 23:15, 26:16, 26:18, 32:6, 32:14

**CRISTINO** [1] - 1:7

**cross** [1] - 21:6

**cross-examination** [1] - 21:6

**CRR** [2] - 1:22, 36:8

**culpability** [4] - 18:6, 19:24, 25:24, 31:5

**culpable** [5] - 16:16,

18:16, 18:21, 18:23, 20:7
**current** [1] - 21:10
**custody** [1] - 33:14
**cut** [4] - 28:16, 28:19, 28:20, 30:24
**cutoff** [1] - 12:13

## D

**danger** [6] - 3:7, 3:11, 3:13, 3:15, 5:6, 5:10
**dangerous** [1] - 33:21
**DATE** [1] - 36:8
**De** [1] - 19:8
**deal** [1] - 21:5
**deciding** [1] - 32:14
**decision** [1] - 22:4
**defendant** [23] - 11:24, 12:13, 16:12, 16:14, 16:19, 17:14, 18:2, 18:16, 20:13, 22:14, 30:16, 31:1, 32:11, 33:3, 33:5, 33:11, 33:15, 33:16, 33:18, 33:24, 34:3, 34:8
**DEFENDANT** [3] - 1:19, 30:6, 35:17
**Defendant** [1] - 2:2
**defendant's** [2] - 10:12, 20:9
**defendants** [18] - 10:23, 14:14, 14:23, 15:3, 15:14, 15:16, 16:10, 17:9, 17:19, 17:21, 18:9, 18:17, 18:21, 18:22, 19:2, 19:4, 19:25, 20:6
**defense** [3] - 18:11, 22:20, 22:22
**definition** [1] - 4:6
**denial** [1] - 22:2
**deny** [4] - 13:22, 20:15, 22:8, 23:9
**department** [1] - 21:3
**departure** [2] - 31:7, 31:8
**deprive** [1] - 19:14
**DEPUTY** [1] - 2:4
**destination** [2] - 32:2, 32:7
**destroy** [1] - 11:1
**destroyed** [4] - 11:15, 11:16, 11:17, 11:20
**destroying** [5] - 11:7, 11:8, 11:10, 12:15, 13:20
**destruction** [2] - 11:11, 13:9

**deter** [1] - 32:19
**determinations** [1] - 26:13
**determinative** [1] - 16:14
**determines** [1] - 14:4
**determining** [1] - 34:23
**deterrence** [3] - 32:18, 32:19, 33:2
**deterrent** [5] - 25:1, 25:13, 31:12, 31:20, 32:16
**detrimental** [1] - 32:1
**device** [1] - 33:21
**difference** [1] - 19:12
**different** [7] - 8:14, 8:18, 15:18, 15:20, 21:16, 25:24, 26:19
**differentiate** [1] - 19:24
**differing** [1] - 22:7
**difficult** [1] - 26:22
**directly** [2] - 16:2, 28:14
**disabled** [3] - 5:9, 10:15, 10:25
**disabling** [1] - 4:17
**disagree** [1] - 18:19
**discuss** [1] - 24:10
**disparities** [2] - 25:15, 26:6
**disposing** [1] - 9:1
**disposition** [1] - 17:25
**distance** [1] - 5:14
**District** [2] - 1:23, 36:9
**district** [1] - 33:16
**DISTRICT** [3] - 1:1, 1:1, 1:14
**DNA** [1] - 33:23
**docket** [1] - 5:21
**dockets** [1] - 15:19
**document** [1] - 22:15
**dollars** [8] - 28:23, 28:25, 29:2, 29:9, 29:17, 29:18, 30:23
**done** [2] - 17:8, 26:17
**double** [2] - 2:25, 15:15
**double-counting** [1] - 2:25
**doubt** [5] - 20:1, 21:14, 21:24, 23:8, 31:17
**down** [5] - 13:3, 13:15, 19:5, 21:11, 21:2
**downward** [4] - 24:15, 25:15, 26:3, 26:7
**draft** [2] - 7:11, 20:18
**dramatically** [1] - 26:5

**drug** [6] - 6:2, 6:22, 17:6, 25:5, 25:11, 29:6
**drug-trafficking** [3] - 25:5, 25:11, 29:6
**drugs** [8] - 16:5, 16:6, 17:6, 25:9, 27:10, 31:25, 32:1, 32:7
**during** [1] - 4:4

## E

**Edil** [1] - 9:19, 9:21
**educated** [1] - 29:21
**education** [2] - 17:4, 24:23
**Edwar** [1] - 14:24
**Edwin** [1] - 14:23
**effect** [1] - 25:1
**effort** [1] - 24:7
**eight** [1] - 14:14
**either** [4] - 9:1, 14:16, 20:13, 25:22
**ELOI** [1] - 1:7
**embrace** [1] - 26:22
**employed** [1] - 13:20
**end** [6] - 9:20, 25:2, 25:9, 25:19, 27:4, 27:5
**endangered** [1] - 5:16
**endangering** [3] - 3:24, 4:22, 5:4
**endangerment** [4] - 2:23, 3:10, 4:4, 4:23
**endeavor** [1] - 32:7
**enforcement** [1] - 21:2
**engage** [1] - 32:14
**engaging** [1] - 32:20
**engine** [1] - 5:13
**engines** [1] - 10:15
**engulfed** [1] - 10:18
**enhancement** [19] - 2:22, 2:24, 3:20, 4:17, 4:19, 5:25, 6:3, 6:9, 7:10, 7:12, 7:13, 7:14, 8:7, 9:24, 10:6, 11:22, 12:9, 12:17, 12:23
**Enrique** [1] - 15:8
**entitled** [2] - 17:14, 36:5
**entry** [5] - 5:21, 6:1, 6:9, 6:22, 22:15
**equally** [1] - 11:10
**Ernesto** [1] - 15:13
**escape** [1] - 31:5
**ESQ** [1] - 1:19
**essential** [4] - 16:4, 16:8, 16:12, 32:5
**establish** [2] - 17:16,

23:14
**established** [2] - 22:19, 23:7
**estimated** [1] - 12:4
**et** [1] - 15:13
**Europe** [2] - 16:6, 25:22
**Evangelisto** [1] - 15:9
**event** [2] - 23:24, 24:4
**evidence** [14] - 7:24, 7:25, 8:4, 10:14, 11:1, 12:23, 13:14, 13:15, 13:21, 19:23, 20:9, 20:12, 21:22
**evidentiary** [1] - 20:11
**exact** [4] - 9:13, 24:24, 26:17, 31:16
**exactly** [7] - 12:25, 25:4, 27:1, 30:18, 31:3, 31:10, 31:19
**examination** [1] - 21:6
**example** [3] - 16:18, 26:13, 26:17
**except** [1] - 4:8
**exception** [1] - 27:12
**excess** [1] - 28:10
**exclude** [2] - 4:11, 4:13
**excludes** [1] - 4:12
**excuse** [1] - 22:10
**exhibits** [1] - 21:9
**experience** [4] - 25:4, 27:5, 28:15, 28:19
**explanation** [1] - 18:8
**exposed** [1] - 26:15
**expressed** [1] - 31:2
**extensive** [1] - 25:4
**extent** [2] - 13:12, 32:3
**extradited** [1] - 29:3
**extrapolation** [1] - 30:22
**extremely** [1] - 24:22
**eyes** [1] - 9:4

## F

**fact** [20] - 3:10, 3:13, 4:22, 12:15, 13:8, 13:18, 13:25, 16:1, 16:3, 16:12, 18:25, 19:5, 19:11, 19:17, 22:19, 25:18, 26:5, 27:13, 34:9, 34:19
**fact-finder** [1] - 18:25
**fact-intensive** [2] - 19:17, 25:18
**fact-specific** [1] - 19:11
**factor** [1] - 19:21

**factors** [6] - 16:18, 23:23, 24:9, 24:12, 30:16, 32:23
**facts** [1] - 26:11
**factual** [1] - 17:16
**fail** [1] - 27:6
**failed** [3] - 11:2, 17:15, 32:13
**failure** [1] - 12:12
**family** [1] - 35:8
**far** [2] - 5:4, 23:11
**fast** [1] - 15:14
**Federal** [2] - 31:2, 36:8
**Federico** [1] - 14:23
**FELIPE** [1] - 1:9
**felt** [1] - 6:6
**few** [2] - 25:19, 28:20
**fifties** [1] - 31:18
**file** [1] - 22:22
**filed** [2] - 22:1, 22:14
**filing** [1] - 5:21
**filings** [1] - 30:12
**final** [3] - 7:12, 20:17, 20:18
**finder** [1] - 18:25
**findings** [2] - 34:9, 34:18
**fine** [1] - 33:4
**fire** [10] - 6:10, 6:23, 7:18, 7:21, 7:22, 8:1, 9:2, 13:16, 13:20, 27:18
**firearm** [2] - 12:21, 33:21
**firearms** [1] - 11:18
**fired** [3] - 5:9, 5:11, 5:24
**firing** [1] - 3:14
**first** [4] - 10:5, 10:12, 22:14, 32:12
**fishing** [4] - 11:14, 11:16, 12:21, 13:4
**fit** [1] - 25:5
**five** [2] - 16:18, 26:1
**flames** [1] - 10:18
**flight** [2] - 4:4, 4:10
**flights** [1] - 35:9
**FLORIDA** [1] - 1:1
**Florida** [8] - 1:4, 1:18, 1:20, 1:24, 27:25, 35:10, 35:11, 36:10
**following** [1] - 33:24
**FOR** [2] - 1:16, 1:19
**foregoing** [1] - 36:3
**forgot** [1] - 21:2
**form** [1] - 5:6
**formal** [1] - 22:1
**forth** [2] - 17:16, 32:23

**forties** [1] - 31:15
**four** [12] - 14:2, 14:22, 15:7, 15:9, 15:12, 15:14, 15:16, 15:20, 18:3, 18:4, 20:7, 23:25
**four-level** [3] - 14:2, 15:7, 15:9
**FPR** [2] - 1:22, 36:8
**front** [1] - 15:11
**furtherance** [1] - 11:19
**furthermore** [1] - 13:14
**future** [2] - 32:15, 32:20

**G**

**gain** [1] - 24:20
**Garcia** [1] - 14:23
**gear** [1] - 11:16
**generally** [3] - 26:1, 27:6, 29:7
**GENNARO** [1] - 1:19
**Gerry** [1] - 2:13
**given** [7] - 4:19, 15:17, 26:4, 31:17, 31:19
**GLENDA** [2] - 1:22, 36:8
**go-fast** [1] - 15:14
**GONZALEZ** [1] - 1:9
**Gonzalez** [1] - 14:12
**Gonzalez-Castaneda** [1] - 14:12
**GONZALEZ-SOLIS** [1] - 1:9
**Government** [23] - 2:20, 2:23, 8:5, 8:15, 8:24, 12:22, 13:7, 14:19, 15:6, 16:3, 16:7, 17:11, 19:15, 19:16, 19:17, 19:19, 20:23, 21:9, 22:24, 25:17, 28:12, 29:5, 30:7
**GOVERNMENT** [1] - 1:16
**Government's** [8] - 5:19, 9:18, 10:4, 14:8, 16:25, 20:10, 22:12, 24:13
**grade** [3] - 17:4, 24:23, 29:21
**graders** [1] - 29:10
**grant** [2] - 17:9, 26:7
**granted** [1] - 24:1
**greater** [1] - 34:13
**gross** [1] - 12:4
**grounds** [2] - 23:25,

35:2
**Guard** [11] - 3:13, 4:18, 4:24, 5:6, 5:9, 5:10, 5:14, 5:15, 5:24, 6:9, 7:18
**guess** [1] - 31:15
**guideline** [18] - 3:6, 4:14, 8:23, 9:10, 9:14, 13:10, 15:25, 16:9, 16:11, 16:15, 16:22, 23:13, 23:14, 24:8, 30:9, 33:1, 34:22, 35:5
**guidelines** [8] - 23:20, 24:16, 30:2, 30:13, 32:22, 33:9, 34:18, 34:21
**guilty** [6] - 18:22, 19:25, 20:2, 20:6, 26:20
**guy** [1] - 29:1

**H**

**half** [3] - 11:5, 11:8
**handled** [1] - 27:7
**harsher** [1] - 29:19
**head** [2] - 28:1, 28:9
**hear** [1] - 5:2, 19:22
**heard** [5] - 4:21, 13:14, 13:15, 20:12
**HEARING** [1] - 1:12
**hearing** [2] - 7:25, 22:16
**heightened** [1] - 10:9
**held** [3] - 8:22, 9:13, 17:2
**helicopter** [5] - 3:16, 6:17, 6:19, 6:21, 7:19
**hereby** [1] - 36:3
**Hernandez** [1] - 14:24
**herring** [1] - 12:11
**high** [1] - 28:14
**higher** [5] - 9:8, 17:5, 25:10, 26:18, 29:12
**higher-up** [1] - 17:5
**highest** [1] - 29:5
**himself** [1] - 5:16
**hinder** [2] - 11:13, 12:2
**hindering** [1] - 13:21
**hindrance** [5] - 8:12, 9:12, 10:9, 10:20, 13:12
**history** [6] - 21:21, 23:15, 26:16, 26:18, 31:6, 32:10
**hold** [1] - 4:3
**Honor** [15] - 2:7, 2:13,

3:1, 4:16, 5:1, 5:20, 6:20, 14:13, 17:12, 22:13, 23:16, 23:17, 28:13, 30:8, 35:19
**HONORABLE** [1] - 1:13
**hope** [1] - 30:1
**Horizon** [2] - 10:16, 13:2
**hours** [2] - 22:15, 33:14
**housed** [1] - 35:11
**hovering** [1] - 6:19
**hundreds** [1] - 29:16
**hung** [1] - 18:4

**I**

**I's** [1] - 2:20
**ice** [1] - 11:17
**identification** [1] - 21:8
**identified** [1] - 21:12
**identify** [1] - 21:7
**illegal** [4] - 5:23, 6:1, 6:9, 6:22
**immediately** [2] - 7:21, 34:4
**immigration** [1] - 33:25
**impact** [1] - 32:1
**important** [1] - 11:10
**importing** [1] - 16:5
**impose** [3] - 24:3, 24:6, 24:21
**imposed** [7] - 23:19, 23:20, 30:5, 32:25, 33:9, 34:8, 35:16
**impression** [1] - 32:13
**imprisonment** [5] - 23:5, 32:13, 33:11, 34:1, 34:6
**include** [3] - 4:24, 16:1, 33:20
**includes** [2] - 4:8, 16:1
**including** [1] - 15:16
**increase** [1] - 26:5
**indeed** [1] - 10:17
**independently** [1] - 3:4
**indicated** [3] - 10:10, 11:24, 30:12
**indicates** [1] - 11:21
**indispensable** [2] - 16:13, 25:8
**individual** [10] - 7:21, 8:15, 17:4, 18:16, 21:4, 23:2, 23:8, 29:16, 29:21, 32:4

**individually** [2] - 28:2, 28:5
**Individually** [1] - 28:4
**individuals** [13] - 6:12, 14:8, 14:20, 15:7, 15:8, 15:21, 25:5, 25:17, 25:19, 25:20, 25:25, 29:7
**inquiries** [1] - 25:18
**inquiry** [1] - 19:17
**instance** [1] - 13:19
**instant** [1] - 31:24
**instead** [1] - 9:8
**integral** [1] - 32:5
**intended** [1] - 12:11
**intensive** [2] - 19:17, 25:18
**intentionally** [3] - 7:17, 8:1, 13:16
**interdicted** [2] - 15:3, 15:14
**interest** [2] - 16:19, 17:1
**interpret** [1] - 18:7
**INTERPRETER** [1] - 5:1
**Interpreters** [1] - 2:3
**interpreters** [1] - 5:1
**introduced** [1] - 20:23
**investigation** [4] - 8:13, 9:12, 13:12, 13:21
**involved** [2] - 18:13, 31:25
**involvement** [1] - 20:9
**issue** [11] - 7:22, 8:3, 8:5, 12:12, 18:5, 18:8, 18:14, 18:20, 18:21, 22:6, 29:13
**issues** [2] - 2:19, 22:1
**items** [1] - 13:4
**itself** [3] - 11:10, 12:16, 31:6

**J**

**jettisoning** [1] - 11:1
**job** [1] - 5:16
**JOSE** [1] - 1:8
**JR** [1] - 1:19
**Juan** [1] - 14:12
**judge** [11] - 7:9, 12:20, 13:24, 18:19, 20:17, 21:20, 22:21, 23:11, 27:24, 28:18, 35:6
**JUDGE** [1] - 1:14
**Judge** [24] - 2:18, 3:3, 4:1, 4:6, 5:8, 6:11, 7:2, 7:4, 9:6, 12:1, 15:3, 15:11, 15:23,

21:16, 23:6, 24:11, 25:2, 28:11, 29:24, 31:2, 31:14, 34:11, 35:2
**judgment** [1] - 33:5
**judicial** [1] - 24:7
**July** [1] - 1:5
**June** [1] - 22:25
**jurisdiction** [2] - 14:15, 15:4
**jurors** [1] - 19:4
**jury** [6] - 18:4, 18:6, 18:15, 19:24, 20:3, 22:3
**jury's** [1] - 18:7
**justice** [3] - 7:10, 7:14, 9:17

**K**

**Key** [1] - 1:4
**kilo** [3] - 28:2, 28:3, 28:16
**kilograms** [3] - 9:7, 9:9
**kilos** [14] - 8:23, 12:5, 14:16, 14:17, 15:4, 15:5, 15:15, 27:15, 27:18, 27:19, 27:22, 27:23, 30:22
**kind** [1] - 26:22
**kinds** [1] - 19:16
**king** [2] - 29:19, 29:20
**know..** [1] - 27:24
**knows** [3] - 16:6, 25:4, 29:14

**L**

**laden** [1] - 10:17
**language** [2] - 16:1, 16:18
**large** [6] - 27:8, 27:9, 30:19, 31:25
**larger** [1] - 32:4
**last** [1] - 26:6
**lastly** [1] - 20:10
**Latin** [1] - 35:9
**law** [4] - 21:2, 32:12, 32:17, 32:18
**least** [3] - 18:7, 20:7, 30:16
**legal** [1] - 12:12
**Lenard** [1] - 15:11
**length** [1] - 32:15
**less** [5] - 8:23, 16:15, 22:15, 28:5, 29:8
**level** [16] - 2:22, 2:24, 7:5, 7:10, 7:22, 8:17, 14:2, 14:20, 15:6,

15:7, 15:9, 15:17, 15:21, 19:18, 21:13, 32:3
**levels** [9] - 3:7, 14:5, 14:22, 14:23, 15:20, 25:10, 29:5
**life** [1] - 29:23
**limits** [1] - 22:24
**lit** [4] - 7:18, 8:1, 8:2, 27:18
**look** [4] - 4:1, 4:6, 8:6, 15:19
**looked** [2] - 14:6, 15:1
**looking** [1] - 9:4
**low** [1] - 32:3
**low-level** [1] - 32:3
**lower** [1] - 34:22
**lowest** [1] - 24:13
**Luis** [1] - 14:24

**M**

**M.O** [1] - 13:19
**man** [6] - 16:23, 24:19, 29:20, 30:2, 31:14
**mandatory** [2] - 21:23, 33:19
**manner** [1] - 34:10
**maps** [1] - 11:19
**marijuana** [1] - 15:5
**marksman** [2] - 5:12, 6:18
**MARTINEZ** [2] - 1:9, 1:19
**Martinez** [1] - 15:3
**MARTINEZ-MEDINA** [2] - 1:9, 1:19
**material** [4] - 8:12, 9:12, 10:9, 10:20
**matter** [4] - 12:2, 12:14, 36:5
**MAURICIO** [2] - 1:9, 1:19
**mean** [3] - 5:17, 19:5, 19:7
**means** [1] - 12:5
**measured** [1] - 8:17
**MEDINA** [2] - 1:9, 1:19
**Medivacked** [1] - 17:23
**members** [1] - 6:5
**MENDOZA** [1] - 1:7
**MERO** [1] - 1:8
**MERO-RIVAS** [1] - 1:8
**messenger** [1] - 2:9
**met** [3] - 13:7, 24:13, 25:3
**Miami** [7] - 1:18, 1:20, 1:24, 1:24, 27:25, 36:9, 36:10

**MICHAEL** [1] - 1:13
**middle** [4] - 14:5, 18:12, 19:2, 32:25
**Milanes** [2] - 15:9, 15:19
**million** [1] - 30:23
**millions** [7] - 28:23, 28:25, 29:2, 29:9, 29:17
**mind** [1] - 32:8
**minds** [1] - 18:6
**minimal** [5] - 14:3, 15:7, 15:10, 19:9, 20:13
**minimum** [2] - 21:23, 24:21
**minor** [10] - 14:4, 14:8, 14:20, 15:6, 15:17, 15:25, 19:9, 20:13, 25:3, 25:17
**minute** [2] - 18:10, 19:1
**minutes** [2] - 14:11, 25:19
**misguided** [1] - 10:8
**mitigating** [1] - 17:14
**mode** [1] - 6:21
**Monday** [1] - 1:12
**money** [3] - 27:8, 27:9
**months** [14] - 23:5, 24:14, 24:16, 24:17, 24:24, 24:25, 30:1, 30:12, 30:14, 31:22, 32:12, 33:7, 34:6, 34:12
**MOORE** [1] - 1:13
**moot** [3] - 2:19, 2:25, 24:7
**mope** [1] - 29:21
**mopes** [1] - 29:11
**Morales** [1] - 15:13
**morning** [5] - 2:7, 2:13, 21:18, 22:1, 22:15
**most** [1] - 29:7
**moving** [1] - 5:14
**Moya** [2] - 15:8, 15:18
**MR** [41] - 2:13, 2:18, 3:3, 4:1, 4:6, 4:11, 5:8, 6:11, 7:2, 7:4, 7:6, 7:9, 10:2, 12:20, 13:24, 18:19, 20:17, 21:16, 21:20, 22:10, 22:21, 23:6, 23:11, 23:16, 24:11, 27:1, 27:17, 27:21, 27:24, 28:1, 28:5, 28:8, 28:11, 28:18, 28:24, 29:24, 34:11, 34:25, 35:2, 35:6, 35:19

**MS** [14] - 2:7, 2:10, 3:1, 5:20, 6:14, 10:5, 17:12, 17:21, 18:1, 18:4, 22:13, 23:17, 28:13, 30:8
**multiple** [1] - 10:24

**N**

**name** [2] - 20:25, 21:10
**nature** [1] - 31:24
**necessarily** [1] - 19:20
**necessary** [1] - 34:13
**needs** [1] - 22:22
**neighborhood** [1] - 28:3
**nets** [1] - 11:17
**never** [2] - 31:12, 32:7
**nevertheless** [1] - 32:4
**new** [1] - 16:17
**next** [6] - 7:8, 7:9, 13:23, 13:24, 20:16, 23:10
**nine** [3] - 8:25, 9:6, 12:4
**NO** [1] - 1:2
**normally** [1] - 6:17
**NORMAN** [1] - 1:9
**North** [2] - 1:24, 36:9
**Northeast** [1] - 1:17
**note** [16] - 2:6, 4:2, 4:5, 4:25, 5:3, 6:8, 6:14, 6:15, 8:7, 8:9, 10:10, 13:22, 20:15, 22:14, 23:9, 23:19
**noted** [1] - 34:1
**notes** [3] - 3:6, 6:17, 11:19
**nothing** [1] - 12:24
**notice** [1] - 22:24
**number** [2] - 7:16, 11:8

**O**

**OBANDO** [1] - 1:7
**OBANDO-BAUTISTA** [1] - 1:7
**object** [5] - 22:7, 34:9, 34:12, 34:16, 35:2
**objected** [1] - 20:19
**objecting** [2] - 7:15, 22:25
**objection** [17] - 7:3, 7:7, 7:8, 7:9, 9:16, 9:25, 10:3, 13:22, 13:23, 13:24, 20:15, 20:16, 20:17, 22:2,

23:9, 23:10, 24:2
**objections** [10] - 2:16, 15:12, 23:11, 23:25, 24:1, 24:8, 26:14, 34:11, 34:15, 34:19
**obstruction** [6] - 7:10, 7:14, 8:12, 9:17, 9:23, 10:19
**obviously** [3] - 31:12, 31:20, 32:15
**occasion** [1] - 23:4
**occur** [1] - 10:12
**occurred** [2] - 8:7, 8:10
**ocean** [1] - 19:3
**october** [1] - 36:7
**OF** [2] - 1:1, 1:4
**offense** [10] - 4:9, 7:5, 8:17, 18:13, 20:1, 20:14, 23:3, 24:24, 26:6, 31:24
**Office** [1] - 1:17
**office** [4] - 4:15, 4:19, 6:5, 33:16
**OFFICER** [3] - 4:16, 4:23, 5:3
**officer** [3] - 5:2, 5:15, 21:2
**official** [3] - 8:13, 13:11, 13:12
**Official** [2] - 1:23, 36:8
**old** [1] - 24:21
**once** [2] - 26:17, 28:2
**one** [12] - 2:19, 3:24, 7:16, 11:8, 13:8, 13:19, 17:22, 20:5, 21:9, 23:9, 24:1, 24:23
**ones** [5] - 3:14, 27:19, 27:20, 29:8, 29:12
**opinion** [1] - 4:14
**opportunity** [4] - 19:22, 29:22, 31:17, 31:19
**oppose** [1] - 17:17
**opposed** [2] - 19:13, 29:25
**order** [2] - 2:1, 34:20
**ordered** [1] - 34:3
**organization** [4] - 17:6, 25:6, 25:11, 29:6
**originally** [3] - 5:20, 7:11, 22:10
**OTH** [1] - 10:18
**otherwise** [2] - 13:10, 32:4
**overall** [1] - 16:5
**overruled** [2] - 26:15
**own** [5] - 9:4, 19:17,

25:18, 30:5, 32:19
**owner** [1] - 17:6

**P**

**Pacific** [1] - 18:12
**Pages** [1] - 1:9
**paid** [2] - 16:20, 16:24
**papers** [1] - 5:21
**paragraph** [7] - 7:16, 8:6, 13:25, 20:17, 20:18, 22:2, 22:7
**part** [6] - 9:23, 15:11, 16:17, 17:3, 27:3, 34:1
**participant** [4] - 4:9, 15:8, 16:16, 19:9
**participate** [1] - 32:6
**participated** [1] - 4:9
**particular** [6] - 4:13, 8:7, 10:3, 14:9, 25:13, 25:23
**parties** [2] - 14:22, 32:21
**parties'** [1] - 14:10
**past** [2] - 17:8, 19:6
**pay** [2] - 33:4, 34:3
**Pedro** [1] - 14:24
**PENAFIEL** [1] - 1:7
**PENAFIEL-MENDOZA** [1] - 1:7
**people** [8] - 3:12, 6:17, 17:1, 27:6, 27:8, 28:24, 29:1, 29:18
**per** [2] - 9:7, 28:3
**percent** [2] - 28:10, 30:3
**perform** [2] - 16:20, 16:24
**performs** [1] - 16:12
**perhaps** [1] - 6:6
**period** [1] - 10:15
**person** [6] - 3:7, 4:7, 4:8, 5:11, 33:15
**personal** [3] - 28:17, 28:18, 31:10
**personal-consumption** [1] - 28:17
**personnel** [1] - 5:14
**perspective** [1] - 29:15
**picked** [2] - 18:12, 19:2
**picture** [2] - 16:5, 21:10
**piled** [1] - 12:7
**pilot** [2] - 6:18, 7:18
**piloting** [1] - 9:20

**pin** [1] - 29:20
**pins** [1] - 29:19
**place** [1] - 10:15
**placed** [1] - 33:12
**places** [1] - 35:10
**platform** [1] - 11:11
**plays** [1] - 32:5
**plea** [4] - 14:19, 19:13, 19:19, 25:16
**pled** [1] - 26:20
**point** [10] - 6:15, 7:1, 13:8, 16:3, 18:15, 18:24, 19:23, 25:14, 29:24, 31:25
**pointed** [4] - 20:10, 21:3, 21:11, 32:11
**points** [1] - 16:7
**poles** [2] - 11:17, 12:21
**poor** [4] - 24:22, 27:7, 29:10, 29:21
**portion** [1] - 13:10
**position** [7] - 4:18, 5:17, 5:19, 6:23, 6:25, 26:24, 27:2
**possessing** [2] - 33:21, 33:22
**possibility** [1] - 12:21
**possible** [2] - 3:12, 35:11
**post** [1] - 33:10
**post-Booker** [1] - 33:10
**Powers** [1] - 36:7
**POWERS** [2] - 1:22, 36:8
**practice** [1] - 30:25
**precision** [3] - 5:12, 5:13, 6:18
**preponderance** [3] - 7:24, 12:23, 21:21
**presence** [1] - 18:9
**presented** [1] - 8:4
**presentence** [2] - 32:22, 34:1
**pretty** [2] - 12:24, 28:14
**prison** [1] - 33:7
**Prisons** [2] - 33:6, 33:15
**probation** [4] - 4:15, 4:19, 5:2, 33:16
**PROBATION** [3] - 4:16, 4:23, 5:3
**probation's** [1] - 5:17
**problem** [2] - 18:15, 26:9
**procedurally** [1] - 34:16
**proceed** [1] - 11:6

**Proceedings** [1] - 35:21
**proceedings** [1] - 36:4
**prohibited** [1] - 33:21
**pronounced** [1] - 34:10
**proof** [3] - 7:23, 8:4, 21:14
**proprietary** [2] - 16:19, 17:1
**prosecution** [3] - 8:13, 11:13, 12:2
**prosecutor** [2] - 3:18, 21:7
**provide** [2] - 29:6, 33:1
**provides** [3] - 8:9, 13:11, 22:22
**proving** [1] - 12:22
**PSI** [2] - 2:17, 19:7
**PSR** [7] - 7:11, 7:13, 9:24, 13:25, 15:13, 20:18
**pull** [1] - 9:21
**pulled** [1] - 14:12
**pun** [1] - 12:11
**punish** [1] - 34:14
**punishment** [1] - 33:2
**pure** [1] - 12:24
**purity** [1] - 28:6
**purposes** [4] - 21:19, 21:21, 21:23, 23:14
**pursuant** [7] - 14:3, 19:13, 19:19, 23:21, 24:6, 24:13, 33:9
**pursue** [1] - 6:7
**pursuing** [1] - 6:22
**put** [8] - 3:12, 5:6, 5:10, 9:10, 13:20, 17:16, 26:18, 29:11
**puts** [1] - 6:24

### Q

**quantity** [1] - 31:25
**quite** [1] - 28:20

### R

**raised** [1] - 26:14
**range** [7] - 8:23, 9:11, 9:14, 13:10, 14:18, 30:9, 33:1
**rather** [1] - 10:14
**rationale** [1] - 34:17
**re** [3] - 6:1, 6:9, 6:22
**re-entry** [3] - 6:1, 6:9, 6:22
**reach** [5] - 18:17, 20:2, 20:4, 20:8,

32:7
**reached** [1] - 3:3
**read** [1] - 19:3
**reading** [1] - 19:13
**real** [1] - 29:13
**really** [10] - 5:18, 9:12, 12:2, 12:9, 18:13, 19:5, 22:6, 25:24, 26:10
**reaping** [3] - 28:25, 29:1, 29:8
**reason** [1] - 3:23
**reasonable** [8] - 19:25, 21:14, 21:24, 23:8, 23:22, 30:15, 31:22, 33:10
**reasoning** [3] - 3:21, 3:22
**reasons** [2] - 7:15, 10:11
**receive** [3] - 14:2, 16:14, 26:2
**received** [7] - 14:1, 15:20, 15:21, 23:4, 26:1, 32:12, 35:4
**recidivism** [2] - 31:6, 31:9
**reckless** [3] - 2:22, 3:10, 4:4
**recognize** [1] - 22:4
**recognized** [2] - 19:6, 19:8
**recommend** [1] - 31:21
**recommendation** [3] - 35:12, 35:13, 35:14
**recommendations** [2] - 14:10, 14:21
**recommended** [3] - 14:8, 14:19, 15:6
**record** [1] - 17:15
**recovered** [4] - 8:25, 9:1, 9:15, 12:3
**red** [1] - 12:11
**reduces** [1] - 7:6
**reduction** [7] - 14:4, 15:10, 15:17, 15:22, 17:10, 19:18, 31:13
**reductions** [3] - 14:20, 15:7, 15:8
**referenced** [1] - 19:8
**referencing** [1] - 26:10
**refuted** [1] - 11:15
**regard** [1] - 20:3
**Reginaldo** [5] - 2:2, 2:4, 2:14, 20:25, 33:6
**REGINALDO** [1] - 1:8
**reiterating** [1] - 22:1
**relative** [2] - 18:6,

18:17
**relatively** [1] - 14:18
**release** [6] - 33:11, 33:12, 33:14, 33:18, 33:20, 34:7
**released** [2] - 24:20, 33:17
**remains** [1] - 23:1
**remanded** [1] - 24:4
**remember** [2] - 7:18, 11:23
**removal** [1] - 33:25
**removed** [1] - 7:13
**rendered** [1] - 4:17
**rendering** [1] - 5:5
**renew** [1] - 34:15
**report** [3] - 32:22, 33:15, 34:2
**REPORTED** [1] - 1:22
**Reporter** [2] - 1:23, 36:8
**represents** [1] - 25:12
**request** [1] - 35:7
**requested** [5] - 5:22, 6:6, 15:9, 22:3, 31:8
**requesting** [3] - 30:11, 30:13, 31:9
**requests** [2] - 19:16, 35:6
**require** [1] - 22:24
**required** [1] - 7:23
**requirement** [1] - 10:19
**resentencing** [1] - 24:5
**resolution** [2] - 2:19, 2:21
**resolve** [1] - 18:14
**resources** [1] - 24:7
**respect** [12] - 7:16, 7:22, 8:3, 8:6, 9:17, 10:2, 12:20, 22:21, 24:11, 25:3, 32:17, 32:18
**response** [5] - 10:4, 17:11, 22:1, 22:12, 22:23
**responsibility** [1] - 26:20
**responsible** [3] - 8:22, 9:13, 17:2
**rest** [3] - 8:8, 8:10, 22:20
**result** [2] - 3:17, 10:19
**resulted** [2] - 8:12, 9:6
**retrieve** [2] - 11:3, 11:4
**review** [1] - 23:19
**reviewing** [1] - 7:19
**ride** [2] - 9:23, 32:9

**rise** [1] - 21:13
**risk** [1] - 6:24
**RIVAS** [1] - 1:8
**Rodriguez** [1] - 2:8
**RODRIGUEZ** [15] - 1:16, 2:7, 2:10, 3:1, 5:20, 6:14, 10:5, 17:12, 17:21, 18:1, 18:4, 22:13, 23:17, 28:13, 30:8
**Rodriguez-Schack** [1] - 2:8
**RODRIGUEZ-
SCHACK** [15] - 1:16, 2:7, 2:10, 3:1, 5:20, 6:14, 10:5, 17:12, 17:21, 18:1, 18:4, 22:13, 23:17, 28:13, 30:8
**role** [19] - 14:1, 14:2, 14:3, 14:4, 14:20, 15:6, 15:10, 15:17, 15:18, 15:25, 16:13, 17:9, 17:15, 17:18, 20:1, 20:14, 25:3, 25:17, 32:5
**roles** [1] - 14:8
**Romero** [1] - 14:24
**Room** [1] - 1:24
**RPR** [2] - 1:22, 36:8
**run** [4] - 18:11, 32:12, 33:8, 33:13
**run-in** [1] - 32:12

### S

**satisfaction** [1] - 23:8
**satisfied** [1] - 13:6
**saw** [1] - 13:4
**SCHACK** [15] - 1:16, 2:7, 2:10, 3:1, 5:20, 6:14, 10:5, 17:12, 17:21, 18:1, 18:4, 22:13, 23:17, 28:13, 30:8
**Schack** [1] - 2:8
**Scheduled** [1] - 1:7
**second** [3] - 4:3, 22:18, 30:17
**secondly** [1] - 10:19
**Section** [2] - 22:22, 32:24
**see** [5] - 5:8, 5:9, 5:15, 5:21, 18:14
**seeking** [1] - 3:20
**seem** [1] - 13:18
**seized** [2] - 27:20, 30:22
**sense** [2] - 5:17, 6:12
**sentence** [32] - 22:23,

23:19, 23:20, 23:21,
23:22, 24:3, 24:4,
24:6, 24:14, 24:19,
24:21, 24:25, 25:12,
26:2, 26:5, 29:12,
29:25, 30:5, 30:14,
30:15, 31:22, 32:16,
32:19, 32:25, 33:9,
33:10, 34:6, 34:8,
34:10, 34:25, 35:4,
35:16
**sentences** [2] - 26:1,
29:19
**sentencing** [8] - 7:25,
19:1, 21:19, 24:8,
25:14, 26:6, 29:14,
33:9
**SENTENCING** [1] -
1:12
**Sentencing** [2] -
15:23, 15:24
**served** [2] - 31:12,
31:20
**set** [4] - 11:6, 12:8,
13:16, 32:23
**setting** [1] - 31:4
**seven** [8] - 8:25, 9:3,
9:8, 11:4, 14:17,
17:20, 17:22, 27:17
**several** [3] - 7:15,
28:19, 30:24
**shall** [6] - 8:10, 33:11,
33:15, 33:18, 33:24,
34:3
**shape** [2] - 8:21, 9:5
**shortly** [1] - 18:14
**shot** [2] - 5:13, 10:15
**shots** [7] - 4:17, 5:5,
5:9, 5:12, 5:24, 6:10,
6:23
**show** [1] - 17:14
**shown** [2] - 21:9,
32:18
**side** [1] - 9:1
**Silfredo** [1] - 14:24
**similar** [3] - 27:11,
32:14, 32:20
**similarly** [1] - 17:8
**similarly-situated** [1] -
17:8
**simply** [1] - 16:20
**sink** [1] - 11:2
**sit** [1] - 5:7
**sitting** [1] - 6:16
**situated** [1] - 17:8
**situation** [2] - 8:18,
16:2
**six** [11] - 8:25, 9:3, 9:9,
11:4, 14:17, 14:23,
15:3, 17:20, 17:21,

**sixth** [4] - 17:4, 24:23,
29:10, 29:21
**sixth-grade-
educated** [1] - 29:21
**sixth-graders** [1] -
29:10
**sixties** [1] - 31:18
**size** [2] - 8:21, 9:5
**slight** [5] - 25:15,
26:3, 30:11, 30:13,
31:9
**small** [2] - 17:3, 24:15
**smuggling** [3] - 5:24,
6:2, 6:23
**so..** [2] - 6:13, 27:14
**society** [1] - 32:2
**sold** [1] - 28:2
**SOLIS** [1] - 1:9
**someone** [4] - 19:14,
25:10, 26:24, 32:8
**somewhere** [4] - 14:5,
18:12, 25:21, 28:2
**source** [1] - 28:14
**South** [3] - 35:9,
35:10, 35:11
**SOUTHERN** [1] - 1:1
**Spanish** [1] - 2:3
**special** [3] - 33:25,
34:4, 34:7
**specific** [3] - 6:3, 6:8,
9:11
**specifically** [3] - 3:6,
7:19, 22:23
**speculation** [1] -
12:24
**STALIN** [1] - 1:7
**stand** [2] - 8:1, 8:20
**standard** [5] - 10:9,
21:15, 21:16, 22:7,
33:19
**standing** [1] - 8:11
**standpoint** [1] - 26:19
**stands** [3] - 24:18,
30:18, 31:15
**start** [2] - 6:23, 13:17
**started** [1] - 11:3
**state** [1] - 21:2
**statement** [1] - 27:2
**statements** [1] - 32:21
**STATES** [3] - 1:1, 1:4,
1:14
**States** [25] - 1:23, 2:4,
2:8, 10:5, 11:21,
12:17, 14:12, 14:15,
16:6, 17:13, 17:17,
22:6, 22:14, 22:17,
23:22, 24:6, 25:23,
30:8, 30:12, 31:8,
31:21, 32:24, 34:4,

35:8, 36:9
**status** [1] - 26:4
**statutory** [1] - 32:23
**STENOGRAPHICAL
LY** [1] - 1:22
**stepped** [1] - 24:25
**still** [2] - 9:10, 12:8
**stood** [1] - 31:1
**stop** [1] - 6:10
**story** [1] - 11:14
**Street** [1] - 1:17
**street** [2] - 30:21,
30:22
**strength** [2] - 20:8,
28:17
**stricken** [1] - 22:17
**subject** [2] - 14:14,
15:4
**submit** [1] - 17:13
**substance** [1] - 33:22
**substantial** [1] - 29:7
**substantially** [1] -
16:15
**substantively** [1] -
34:13
**succeed** [1] - 11:24
**succeeded** [2] -
11:25, 12:15
**successful** [2] -
10:21, 10:22
**sudden** [1] - 6:21
**sufficient** [4] - 8:11,
25:13, 29:1, 33:1
**suggest** [1] - 20:13
**Suite** [1] - 1:20
**sums** [4] - 27:8, 27:9,
30:19
**supervised** [4] -
33:12, 33:18, 33:19,
34:7
**supported** [1] - 12:18
**Supreme** [1] - 22:4
**surrendering** [1] -
33:25
**sustain** [1] - 7:3
**sustained** [2] - 24:2,
34:19
**swallowed** [1] - 8:16

## T

**Tampa** [1] - 20:24
**task** [1] - 16:24
**tasks** [1] - 16:21
**tends** [1] - 6:11
**tens** [2] - 29:9, 29:17
**Tenth** [1] - 8:15
**Teran** [1] - 14:24
**term** [3] - 22:2, 33:7,
33:12

**terms** [3] - 19:24,
25:24, 32:14
**testified** [1] - 7:19
**testify** [1] - 13:4
**testimony** [5] - 5:11,
6:16, 7:17, 8:19,
13:2, 13:5
**THE** [60] - 1:13, 1:16,
1:19, 2:6, 2:9, 2:11,
2:16, 3:2, 3:23, 4:3,
4:8, 4:15, 4:21, 5:1,
5:19, 7:1, 7:3, 7:5,
7:8, 10:1, 10:4,
12:19, 13:6, 17:11,
17:19, 17:24, 18:3,
18:5, 19:7, 21:15,
21:19, 22:9, 22:12,
23:1, 23:7, 23:13,
23:18, 26:9, 27:15,
27:19, 27:23, 27:25,
28:4, 28:6, 28:10,
28:12, 28:15, 28:22,
29:22, 30:4, 30:6,
30:7, 31:23, 34:24,
35:1, 35:3, 35:13,
35:17, 35:18, 35:20
**theory** [2] - 9:19,
16:25
**therefore** [1] - 8:17
**thereto** [1] - 35:12
**thousands** [1] - 29:16
**three** [5] - 6:17, 14:5,
23:25, 24:1, 26:14
**threw** [1] - 9:25
**timeliness** [1] - 22:21
**Title** [3] - 14:7, 14:9,
32:23
**today** [2] - 24:3, 31:15
**today's** [1] - 22:16
**took** [1] - 10:15
**top** [2] - 28:1, 28:9
**Torres** [1] - 22:5
**total** [5] - 9:9, 9:11,
27:19, 34:5, 34:6
**totally** [1] - 22:16
**trafficking** [5] - 25:5,
25:11, 29:6, 30:19,
31:4
**trained** [2] - 5:12, 5:16
**transaction** [1] - 25:23
**transcription** [1] -
36:4
**transport** [3] - 16:24,
25:9, 27:10
**trial** [12] - 5:11, 6:16,
13:5, 13:14, 17:20,
17:22, 17:24, 19:14,
20:23, 22:3, 22:19,
29:14
**tried** [1] - 11:1

**trying** [3] - 19:23,
26:23, 31:4
**turns** [1] - 30:3
**two** [21] - 2:22, 2:24,
3:6, 7:10, 10:11,
11:7, 14:5, 14:20,
14:22, 15:6, 15:7,
15:8, 15:17, 15:21,
18:1, 19:18, 20:6,
22:15, 34:11, 35:6
**two-level** [8] - 2:22,
2:24, 7:10, 14:20,
15:6, 15:17, 15:21,
19:18
**types** [1] - 32:20

## U

**U.S** [8] - 1:17, 15:2,
15:4, 15:13, 15:23,
15:24, 22:4, 30:17
**ultimate** [3] - 18:25,
32:2, 34:25
**ultimately** [1] - 25:22
**unable** [2] - 18:17,
20:2
**unclear** [2] - 6:6, 9:24
**uncontested** [1] -
22:19
**under** [5] - 16:15,
16:21, 20:20, 34:18
**uneducated** [1] - 27:7
**UNITED** [3] - 1:1, 1:4,
1:14
**united** [1] - 1:23
**United** [24] - 2:4, 2:8,
10:5, 11:21, 12:17,
14:12, 14:15, 16:6,
17:13, 17:17, 22:6,
22:14, 22:17, 23:22,
24:6, 25:23, 30:8,
30:12, 31:8, 31:21,
32:24, 34:4, 35:8,
36:9
**unlawfully** [1] - 33:22
**unless** [1] - 8:12
**unreasonable** [2] -
34:13, 34:16
**unwanted** [2] - 25:14,
26:6
**up** [10] - 2:16, 7:6,
17:5, 18:12, 19:2,
24:25, 27:21, 29:2,
29:4, 29:24
**upward** [3] - 30:14,
31:7, 31:8

## V

**value** [2] - 30:21,

30:23

**variance** [7] - 24:15, 25:15, 26:3, 26:8, 30:11, 30:13, 31:9
**Varon** [1] - 19:8
**Vasquez** [2] - 9:21
**Vasquez-Vasquez** [1] - 9:21
**Vazquez** [2] - 9:19
**Vazquez-Vazquez** [1] - 9:19
**verdict** [5] - 18:8, 18:18, 20:2, 20:4, 20:8
**version** [1] - 20:11
**versus** [8] - 2:4, 14:12, 15:2, 15:13, 22:5, 23:22, 24:6
**vessel** [22] - 5:7, 6:10, 6:22, 10:17, 10:23, 10:24, 11:6, 11:9, 11:10, 11:15, 12:6, 12:8, 12:16, 13:3, 13:4, 13:20, 14:14, 15:4, 15:14, 17:22, 27:16, 31:4
**victims** [1] - 6:13
**video** [5] - 7:20, 8:19, 9:4, 9:18, 12:25
**videotape** [1] - 10:23
**Visbal** [1] - 15:2
**VISBAL** [1] - 15:2
**vote** [1] - 20:3
**vs** [1] - 1:5

## W

**waived** [1] - 9:3
**warrant** [2] - 8:11, 17:17
**warranted** [1] - 25:15
**water** [1] - 5:15
**weaponry** [1] - 5:12
**weapons** [1] - 3:14
**weaving** [1] - 6:20
**weighed** [2] - 8:16, 9:15
**weight** [3] - 9:11, 12:4
**well-trained** [1] - 5:12
**West** [1] - 1:4
**wholesale** [1] - 28:5
**willful** [1] - 9:18
**willingly** [1] - 4:9
**willingness** [1] - 32:6
**wiser** [1] - 6:7
**witness** [2] - 8:1, 8:20
**witnessed** [1] - 14:11
**worth** [1] - 27:23
**written** [1] - 22:22

## Y

**years** [13] - 14:7, 24:21, 25:1, 25:12, 26:1, 26:3, 28:25, 29:8, 29:25, 30:2, 33:12, 34:6
**YVONNE** [1] - 1:16
**Yvonne** [1] - 2:8